1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   RONALD J. HOLLAND, Cal. Bar No. 148687
2  rholland@sheppardmullin.com
   ELLEN M. BRONCHETTI, Cal. Bar No. 226975
3  ebronchetti@sheppardmullin.com
   MATTHEW C. LEWIS, Cal. Bar No. 274758
4  malewis@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4109
   Telephone:  415.434.9100
6  Facsimile:  415.434.3947

7  Attorneys for Defendant
   IRWIN INDUSTRIES, INC.

8                UNITED STATES DISTRICT COURT FOR THE

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  CARL CURTIS, an individual;          Case No. 2:15-cv-02480
    ARTHUR WILLIAMS, an individual,
12                                       **MEMORANDUM OF POINTS AND**
                Plaintiffs,              **AUTHORITIES IN SUPPORT OF**
13                                       **DEFENDANT IRWIN**
          v.                             **INDUSTRIES, INC.'S MOTION TO**
14                                       **DISMISS PLAINTIFFS' FIRST**
    IRWIN INDUSTRIES, INC. a             **AMENDED COMPLAINT**
15  California corporation; and DOES 1   **PURSUANT TO FEDERAL RULE**
    through 100, inclusive,              **OF CIVIL PROCEDURE 12(b)(6)**
16
                Defendant.               *[Filed concurrently with Defendant's*
17                                       *Notice of Motion; Declaration of*
                                         *Marita Swanson; Request for Judicial*
18                                       *Notice; and [Proposed] Order]*

19                                       **Date:   July 27, 2015**
                                         **Courtroom 11**
20                                       **Time:  1:30 pm**
                                         **Judge: Otis D. Wright, II**
21

22                                       [Complaint Filed: February 17, 2015]
                                         [FAC File: May 4, 2015]
23

24

25

26

27

28

SMRH:437431176.12                              DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION .................................................................................. 1

II.    BACKGROUND ................................................................................... 2

III.   ARGUMENT AND AUTHORITIES.................................................... 4

    A.   Plaintiffs' Claims Are Preempted by Section 301 of the LMRA And Therefore Must Be Dismissed (And Arbitrated Pursuant to the CBA).................................................................... 4

         1.   Plaintiffs' Claims Are Governed Exclusively By, And Require Interpretation Of, The CBAs.......................................... 6

         2.   Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Failed to Grieve or Arbitrate Their Preempted Claims Prior to Filing This Action ....................................................................... 9

    B.   Plaintiffs' Claims Must Be Dismissed Because They Failed to Exhaust Their Exclusive Contractual Remedies ............................... 10

         1.   The CBAs Contain an Exclusive Mandatory Arbitration Agreement ................................................................................ 11

         2.   Despite A Clear and Unmistakable Agreement To Grieve and Arbitrate Their Claims, Plaintiffs Failed To Do So, And Accordingly Their Claims Must Be Dismissed ............................ 14

    C.   Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Claims Are Precluded By Labor Code Section 514 and Wage Order 16................. 154

    D.   Plaintiffs' Claims Should Be Dismissed for the Separate and Independent Reason That Plaintiffs' State Law Claims Have No Force or Effect Under OCSLA And Therefore Fail to State a Claim Upon Which Relief May Be Granted .......................................... 176

         1.   Each of Plaintiffs' Claims Arise from an OCSLA Situs, Rendering Federal Law as the Rule of Decision ....................... 176

         2.   43 U.S.C. §1333(a)(2)(A) Does Not Incorporate Plaintiffs' State Claims As Surrogate Federal Law, Because The California Law Upon Which They Are Premised Is Not "Applicable" And Is "Inconsistent" With The Federal Fair Labor Standards Act ......... 19

IV.    CONCLUSION................................................................................... 25

DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*14 Penn Plaza LLC v. Pyett*
    556 U.S. 247 (2009) ................................................................. 11, 10

*Allen v. Atlantic Richfield Co.*
    724 F.2d 1131 (5th Cir. 1984) ................................................. 22

*Alvarez v. IBP, Inc.*
    339 F.3d 894 (9th Cir. 2003) ................................................... 21

*Audette v. Int'l Longshoremen's and Warehousemen's Union*
    195 F.3d 1107 (9th Cir. 1999) ...................................................5

*Avco Corp. v. Machinists*
    390 U.S. 557 (1968) ............................................................... 6, 7

*Barker v. Hercules Offshore, Inc.*
    713 F.3d 208 (5th Cir. 2013) ................................................ 18, 19

*Brigham v. Eugene Water & Electric Bd.*
    357 F.3d 931 (9th Cir. 2004) ................................................... 22

*Caterpillar Inc. v. Williams*
    482 U.S. 386 (1987) ...................................................................6

*Cathcart v. Sara Lee Corp.*
    2011 U.S. Dist. LEXIS 137352 (N.D.Cal. Nov. 30, 2011) ............... 16

*Cisneros v. Harrington*
    2012 U.S. Dist. LEXIS 108348 (C.D. Cal. 2012) ............................ 24

*Continental Oil Co. v. London S.S. Owners' Mut. Ins. Assoc.*
    417 F.2d 1030 (5th Cir. 1969) ....................................... 19, 20, 21, 22

*Couvillion v. Nicklos Oil & Gas Co.*
    671 F. Supp. 446 (E.D. La. 1987) ............................................. 20

*In re Deepwater Horizon*
    745 F.3d 157 (5th Cir. 2014) ................................................... 17

-ii-

1

<u>FEDERAL CASES (Cont'd)</u>

2

*DelCostello v. Int'l Bhd. of Teamsters*
3
   462 U.S. 151 (1983)............................................................... 14

4
*Firestone v. S. Cal. Gas Co.*
5
   219 F.3d 1063 (9th Cir. 2000) ...............................................8

6
*Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust*
   *for So. Calif.*
7
   463 U.S. 1 (1983)...................................................................4

8
*Franks v. Chevron Corp.*
9
   2007 U.S. Dist. LEXIS 61733 (S.D. Tex. 2007) ............................... 18

10
*Genesis Healthcare Corp. v. Symczyk*
11
   133 S. Ct. 1523 (2013) ............................................................ 21

12
*George v. UXB Int'l, Inc.*
13
   1996 U.S. Dist. LEXIS 22292; 1996 WL 241624 (N.D. Cal. 1996)................. 24

14
*Gilmer v. Interstate/Johnson Lane Corp.*
15
   500 U.S. 20 (1991).................................................................6

16
*Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.*
   453 U.S. 473 (1981) ......................................................... 17, 19
17

18
*Hamilton Materials Inc. v. Dow Chem. Corp.*
   494 F.3d 1203 (9th Cir. 2007) .....................................................2
19

*Hayden v. Reickerd*
20
   957 F.2d 1506 (9th Cir. 1991) ....................................................6

21
*Heath v. AT&T Corp.*
22
   2005 WL 2206498 (N.D. Cal., Sept. 12, 2005) .....................................9

23
*Hollier v. Union Texas Petroleum Corp.*
24
   972 F.2d 662 (5th Cir. 1992) .................................................... 18

25
*Jackson v. Southern California Gas, Co.*
   881 F.2d (9th Cir. 1989) ..........................................................9
26

27
*Kilbourne v. Coca-Cola Co.*
   2014 U.S. Dist. LEXIS 124439 (S.D. Cal. July 11, 2014) .......................... 16
28

SMRH:437431176.11          DEFENDANT'S MOTION TO DISMISS

FEDERAL CASES (Cont'd)

*Le Sassier v. Chevron USA, Inc.*
    776 F.2d 506 (5th Cir. 1985) ............................................... 20, 22

*Lingle v. Norge Div. of Magic Chef*
    486 U.S. 399 (1988)................................................................5

*Livadas v. Bradshaw*
    512 U.S. 107 (1994).......................................................... 10, 13

*Luchini v. CarMax, Inc.*
    2012 U.S. Dist. LEXIS 157253 (E.D. Cal. 2012)............................ 13

*Mersnick v. USProtect Corp.*
    2006 U.S. Dist. LEXIS 94408, 2006 WL 3734396 (N.D. Cal. 2006)......... 23, 24

*Metropolitan Edison Co. v. N.L.R.B.*
    460 U.S. 693 (1983).......................................................... 11, 13

*MGIC Indem. Corp. v. Weisman*
    803 F.2d 500 (9th Cir. 1986) ...................................................2

*Moses H. Cone Hospital v. Mercury Constr. Corp.*
    460 U.S. 1 (1983)..................................................................5

*Nations v. Morris*
    483 F.2d 577 (5th Cir. 1973) ................................................. 20

*Newberry v. Pacific Racing Ass'n*
    854 F.2d 1142 (9th Cir. 1988) ..................................................5

*Nome Eskimo Cmty. v. Babbitt*
    67 F.3d 813 (9th Cir. 1995) .................................................. 17

*Olguin v. Inspiration Consol. Copper Co.*
    740 F.2d 1468 (9th Cir. 1984) ............................................... 5, 6

*Oppen v. Aetna Ins. Co.*
    485 F.2d 252 (9th Cir. 1973)................................................. 21

*Pacific Merchant Shipping Ass'n v. Aubry*
    918 F.2d 1409 (9th Cir. 1990) ............................................... 24

DEFENDANT'S MOTION TO DISMISS

## FEDERAL CASES (Cont'd)

*Paul v. United States*
    371 U.S. 245 (1963) ........................................................................ 23

*Quevedo v. Macy's Inc.*
    798 F.Supp.2d 1122 (C.D. Cal. 2011) ............................................ 13

*Rodrigue v. Aetna Casualty & Surety Co.,*
    395 U.S. 352, 361 (1969) ....................................................... 17, 18, 23

*Rousseau v. Teledyne Movible Offshore, Inc.*
    805 F.2d 1245 (5th Cir. 1986) ........................................................ 22

*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*
    895 F.2d 1043 (5th Cir 1990) ........................................................ 22

*United Food & Commercial Workers v. Foster Poultry*
    74 F.3d 169 (9th Cir. 1995) ........................................................... 10

*United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*
    484 U.S. 29 (1987) ........................................................................... 9

*Valladolid v. Pac. Operations Offshore, LLP*
    604 F.3d 1126 (9th Cir. 2010) ........................................................ 17

*Vandervere v. Lloyd*
    644 F.3d 957 (9th Cir. 2011) .......................................................... 13

*Wright v. Universal Maritime Serv. Corp.*
    525 U.S. 70 (1998) .......................................................................... 11

*Young v. Anthony's Fish Grottos Inc.*
    830 F.2d 993 (9th Cir. 1987) ........................................................ 6, 9

## STATE CASES

*Armenta v. Osmose, Inc.*
    135 Cal. App. 4th 314 (2005) ........................................................ 23

*Bono Enterprises, Inc. v. Bradshaw*
    32 Cal. App. 4th 968 (1995) .......................................................... 23

DEFENDANT'S MOTION TO DISMISS

## STATE CASES (Cont'd)

*Brockwood v.Bank of America, Nat'l Trust & Savings Ass'n*
  45 Cal. App. 4th 1667 (1996) ....................................................5

*Cone v. Union Oil Co. of Cal.*
  129 Cal. App. 2d 558 (1954) ................................................... 14

*Florio v. City of Ontario*
  130 Cal. App. 4th 1462 (2005) ..............................................4

*Iskanian v. CLS Transportation Los Angeles*
  59 Cal.4th 348 (2014) ............................................................ 13

*Levy v. Skywalker Sound,*
  108 Cal. App. 4th 753 (2003) ..................................................5

*Mendiola v. CPS Security Solutions, Inc.*
  60 Cal. 4th 833 (2015) ........................................... 1, 2, 7, 22

*Posner v. Grunwald-Marx, Inc.*
  56 Cal. 2d 169 (1961) ........................................................... 10

*Seymore v. Metson Marine, Inc.*
  194 Cal. App. 4th 361 (2011) ................................................ 22

*Tidewater Marine Western, Inc. v. Bradshaw*
  14 Cal. 4th 557 (1996) .......................................................... 24

*Vranish v. ExxonMobil Corp.*
  223 Cal. App. 4th 103 (2014) .......................................... 15, 16

## FEDERAL STATUTES & RULES

29 C.F.R. § 785.19 .................................................................... 21
29 C.F.R. § 785.19(b) ............................................................... 23
29 C.F.R. § 785.22 ........................................................ 21, 22, 23
29 C.F.R. § 785.23 ........................................................ 22, 22, 24

9 U.S.C. § 1 et seq. .................................................................. 13
29 U.S.C. § 185 ..........................................................................6
29 U.S.C. § 185(a) (Labor Management Relations Act § 301) ............ 1, 4-9, 11, 15

DEFENDANT'S MOTION TO DISMISS

1

## FEDERAL STATUTES & RULES (Cont'd)

29 U.S.C. § 201 et seq. (Fair Standards Labor Act of 1938) ............................. 21-25

29 U.S.C. § 206 ............................................................................................ 21

29 U.S.C. § 207 ............................................................................................ 21

43 U.S.C. § 1301(a)(2) ................................................................................. 17

43 U.S.C. § 1331 *et. seq.* ........................................................................ 1, 17

43 U.S.C. § 1331(a) ...................................................................................... 17

43 U.S.C. § 1333(a)(1) ............................................................... 1, 17, 18, 23

43 U.S.C. § 1333(a)(2)(A) ................................................... 2, 17-21, 24

Fair Labor Standards Act ........................................................... 21, 24

Federal Rule of Evidence
      Rule 201(b) ......................................................................... 18

Federal Rules of Civil Procedure
      Rule 12(b) ............................................................................. 24
      Rule 12(b)(1) ......................................................................... 2
      Rule 12(b)(6) ......................................................................... 2
      Rule 12(d) ............................................................................. 2
      Rule 56 ................................................................................. 2

## STATE STATUTES & RULES

California Business and Professions Code
      § 17200 ................................................................................ 23

California Industrial Wage Order No. 16 ............................. 1, 4, 8, 11-16

California Labor Code
      §§ 201–203 .......................................................................... 24
      § 510 .................................................................................... 15
      § 511 .................................................................................... 15
      § 514 ................................................................... 1, 8, 15, 16

Private Attorneys General Act of 2004 ("PAGA") ......................... 1, 3, 7, 8, 13, 14

Submerged Lands Act § 2 .......................................................... 16

SMRH:437431176.11                                          DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiffs Carl Curtis and Arthur Williams, former employees of Irwin, filed a First Amended Complaint against Irwin alleging seven classes of action: (1) Minimum Wage Violations; (2) Pay Stub Violations; (3) Unfair Competition; (4) Failure to Timely Pay Final Wages; (5) Failure to Provide Lawful Meal and Rest Periods; (6) Failure to Pay Overtime and Double-time Wages; and (7) Civil Penalties Under the Private Attorneys General Act of 2004 ("PAGA").

Each of Plaintiffs' claims—all of which relate to overtime, meal periods, rest periods and matters derivative thereof—should be dismissed because they fail to state a claim for which relief may be granted under FRCP 12(b)(6).  First, Plaintiffs' claims require substantial interpretation of the terms of the agreements entered into between the parties, and are thereby preempted by Section 301 of the Labor Management Relations Act.  Second, Plaintiffs failed to grieve and arbitrate their claims despite a clear and unmistakable requirement in the applicable collective bargaining agreements ("CBAs") to do so, and thereby failed to exhaust their contractual remedies.  Third, even if Plaintiffs were not required to grieve and arbitrate their claims under the CBAs, and even if Plaintiffs claims are not preempted under LMRA Section 301, Plaintiffs are exempt from all California overtime requirements under Labor Code section 514 and California Industrial Wage Order No. 16 ("Wage Order 16") by virtue of the terms of the applicable CBAs.  For all these reasons, Plaintiffs' claims must be dismissed.

Additionally, Plaintiffs' claims should be dismissed because they rely solely on the California Supreme Court's decision in *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal.4th 833 (2015), which does not apply in this case.  Under the Outer Continental Shelf Lands Act, ("OCSLA," 43 U.S.C § 1331 *et. seq*.), drilling platforms at least three miles from the California coast are subject to exclusive federal jurisdiction.  43 U.S.C. § 1333(a)(1).  Because the oil platforms Plaintiffs allege they worked on are located on the Outer Continental Shelf, this action is governed

-1-

DEFENDANT'S MOTION TO DISMISS

exclusively by federal law.  Under OCSLA, state law applies only when it is "not inconsistent" with federal law.  43 U.S.C. § 1333(a)(2)(A).  The California Supreme Court's decision in *Mendiola* is <u>not consistent</u> with federal law and therefore does not apply to work conducted on the Outer Continental Shelf.  Thus, Plaintiffs' allegations that California state law entitles them and the putative class to be compensated for time spent on an OCLSA situs does not set forth a cognizable claim upon which relief can be granted.

For these reasons and the ones set forth below, Plaintiffs' entire First Amended Complaint must be dismissed.

## II.  BACKGROUND

On February 17, 2015, Plaintiffs, individually and behalf of all persons similarly situated filed a Complaint in the Superior Court of California, County of Santa Barbara, entitled: *Curtis et al. v. Irwin Industries, Inc., and Does 1 through 100.* In the original Complaint, Plaintiffs alleged the following six causes of action: (1) Minimum Wage Violations; (2) Pay Stub Violations; (3) Unfair Competition; (4) Failure to Timely Pay Final Wages; (5) Failure to Provide Lawful Meal Periods; and (6) Failure to Pay Overtime and Double-time Premium Wages.  The Complaint was served on Defendant on March 4, 2015.

Defendant filed its Answer to Plaintiffs' Complaint in Santa Barbara County Superior Court on April 2, 2015, and timely removed the action to this Court on April 3, 2015.  After removing this action, on April 9, 2015 Defendant was served with Plaintiffs' First Amended Complaint ("FAC"), which had been filed in state court on April 1, 2015.  Request for Judicial Notice ("RJN"), ¶ 1; Exh. 1. [1]  The only two differences between Plaintiffs' original Complaint and First Amended Complaint are:

---

[1] In deciding a motion under FRCP 12(b)(6), the Court may consider matters that are subject to judicial notice. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  If resolution of an FRCP 12(b)(6) motion requires consideration of facts extrinsic to the pleadings that are not judicially noticeable, the Court may treat the motion as one for summary judgment under FRCP 56. FRCP 12(d); *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

1   (1) the addition of "rest breaks" to Plaintiffs' Fifth Cause of Action; and (2) the

2   addition of Plaintiffs' Seventh Cause of Action seeking civil penalties under the

3   Private Attorneys General Act of 2004 ("PAGA").

4          Pursuant to agreement between the parties, on May 4, 2015, Plaintiffs filed a

5   notice with this Court attaching their FAC.  The parties subsequently agreed to allow

6   Defendant until May 29, 2015, to respond to Plaintiffs' FAC.

7          At all relevant times during their employment with Defendant, both Plaintiffs—

8   Carl Curtis and Arthur Williams were members of United Steel, Paper and Forestry,

9   Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International

10  Union, Local 1945 (the "Union" or "USW").  Declaration of Marita Swanson

11  ("Swanson Dec."), ¶ 5; Exhs. 1-2.  Plaintiff Curtis was an employee of Defendant

12  and worked sporadically for the Company during the following time periods: August

13  2007 to January 2008; February to April 2009; and January to March 2014.  *Id.* at ¶ 3.

14  Plaintiff Williams was an employee of Defendant during the period of September

15  2006 to March 2014.  *Id.*

16         Plaintiffs' allegations involve purported class members who seek compensation

17  for 24 hours for each day worked during the class period.  The fourteen (14) platforms

18  on which the class members worked are fixed platforms, connected to the seabed of

19  the Outer Continental Shelf, in that they are located more than three (3) miles from

20  the California coast.  RJN, ¶¶ 2 & 4-5; Exhs. 2 & 4-5 .  The Court may take judicial

21  notice of the fact that all fourteen (14) platforms are located more than three miles

22  from the California coast.  RJN, ¶ 4; Exh. 4.[2] Plaintiffs seek recovery for alleged

23  injury occurring exclusively on oil platforms located in federal jurisdiction under the

24  Outer Continental Shelf Lands Act ("OCSLA").

25

26  _____

27  [2] Defendant also requests the court take judicial notice of information regarding each of the fourteen
    platforms from the website of the Bureau of Safety and Environmental Enforcement (BSEE), that

28  demonstrate the platforms are permanently or temporarily attached to the seabed and more than 3
    miles from land.  RJN, ¶5; Exh.5.

1    The terms and conditions of both Plaintiffs' employment were governed by the
2    CBAs between Defendant and USW, discussed in detail below, copies of which are
3    attached to the Swanson Declaration as Exhibits 1 and 2. Swanson Dec., ¶ 5; Exhs. 1-
4    2. The CBAs contain a broad arbitration provision requiring arbitration of any
5    allegation by the Union of violation of "any of the terms of [the agreements]."
6    Swanson Dec. ¶¶ 5-6; Exh. 1, pp. 8-9, Art. 13; Exh. 2, pp. 10-11, Art. 14. The CBAs
7    also contain a targeted, specific arbitration provision, requiring grievance and
8    arbitration of "[a]ny alleged violation of [Wage Order 16 or] any applicable wage
9    order," thereby aimed directly at Plaintiffs' claims here. *Id.*, ¶¶ 5-6; Exh. 1, p. 11, §
10   14.11; Exh. 2, p. 13, § 15.11.

11   **III.    ARGUMENT AND AUTHORITIES**

12       **A.    Plaintiffs' Claims Are Preempted by Section 301 of the LMRA And
13            Therefore Must Be Dismissed (And Arbitrated Pursuant to the
             CBA)**
14       During their employment with Irwin, Plaintiffs (and putative class members)
15   are, or were, represented by USW Local 1945. Swanson Dec. ¶ 5. As Union
16   members, Plaintiffs are bound by the terms of the CBAs between the Union and
17   Irwin. *See Florio v. City of Ontario*, 130 Cal. App. 4th 1462, 1466 (2005) ("a
18   member of a bargaining unit is bound by the terms of a valid collective bargaining
19   agreement, though he is not formally a party to it and may not even belong to the
20   union which negotiated it").[3]
21       Section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a))
22   provides exclusive federal jurisdiction over claims involving collective bargaining
23   agreements (CBAs) between employers and unions, and preempts any state law claim
24   based on such an agreement. *Franchise Tax Board of Calif. v. Construction Laborers*
25   *Vacation Trust for So. Calif.*, 463 U.S. 1, 23 (1983). State law claims preempted
26

27   ───────────────────
28   [3] A true and correct copy of the two active CBAs covering proposed class members are attached as
     Exhibits 1 and 2 to the Swanson Declaration, filed herewith.

1  under Section 301 are re-characterized as federal claims.  *Olguin v. Inspiration*

2  *Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (disapproved on other

3  grounds in *Allis-Chalmers*, 471 U.S. 202 (1985).  The courts have consistently

4  recognized the broad scope of Section 301 preemption:

5   > The preemptive force of Section 301 is so powerful that it displaces
   > entirely any state cause of action for violation of a collective bargaining
6   > agreement . . . and any state claim whose outcome depends on analysis
7   > of the terms of the agreement.

8  *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1146 (9th Cir. 1988) (*citing*

9  *IBEW v. Hechler*, 481 U.S. 851, 859 (1987)).  The U.S. Supreme Court has declared

10  that "state-law rights and obligations that do not exist independently of private

11  agreements, and that as a result can be waived or altered by agreement of private

12  parties, are pre-empted by those agreements." *Allis-Chalmers*, 471 U.S. at 211–13.

13      Thus, the test for determining if a state law claim is preempted by Section 301

14  is whether the right exists by virtue of the CBA or "the application of state law

15  require[s] the interpretation of a collective bargaining agreement, or substantially

16  depend[s] upon analysis of the [collective bargaining agreement]." *Newberry,*

17  854 F.2d at 1147 (internal citations omitted, *relying on Lingle v. Norge Div. of Magic*

18  *Chef*, 486 U.S. 399, 405–06 (1988) and *Allis-Chalmers*, 471 U.S. at 211–13).  This

19  remains true even where interpretation is required to evaluate the employer's defense

20  to a plaintiff's state law cause of action.  *See Audette v. Int'l Longshoremen's and*

21  *Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (civil rights claim

22  preempted where interpretation of agreement required to evaluate employer's defense

23  of legitimate non-business reason for action); *see also*  (claim for unpaid wages

24  preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to

25  wages at the level set by the CBA").

26      Under both California and federal law, "any doubts concerning the scope of

27  arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*

28  *Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 26, fn. 32 (1983); *Brockwood v.*

-5-

1   *Bank of America, Nat'l Trust & Savings Ass'n*, 45 Cal. App. 4th 1667, 1671 (1996).

2   **Plaintiffs bear the burden to show that that arbitration of their claims is not**

3   **appropriate**. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

4   As set forth below, Plaintiffs cannot meet this burden and therefore their claims must

5   be dismissed in favor of arbitration under the CBAs.

6        The fact that Plaintiffs do not expressly allege that a CBA governs the

7   employment relationship is not enough to avoid preemption under Section 301. A

8   plaintiff may not avoid preemption under federal law "simply by omitting from the

9   complaint federal law essential to his claim, or by casting in state law terms a claim

10  that can be made only under federal law." *Olguin*, 740 F.2d at 1472; *see also*

11  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (When "[t]he heart of the

12  [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that

13  complaint arises under federal law.")  Instead, the court must look beyond the face of

14  the complaint to determine whether the claims pled are really Section 301 claims

15  "artfully pled" to avoid preemption under federal law. *Young v. Anthony's Fish*

16  *Grottos Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).  If so, the "artful pleading doctrine"

17  requires that the state law claims be re-characterized as Section 301 claims. *Olguin*,

18  740 F.2d at 1472.

19              1.    **Plaintiffs' Claims Are Governed Exclusively By, And Require**

20                   **Interpretation Of, The CBAs**

21       Plaintiffs' claims are nothing more than artfully pled claims for breach of a

22  CBA which is subject to Section 301 of the LMRA. *See* 29 U.S.C. § 185; *Avco Corp.*

23  *v. Machinists*, 390 U.S. 557, 559–60 (1968) (a claim or cause of action seeking to

24  remedy an alleged violation of a collective bargaining agreement is subject to Section

25  301 of the LMRA).  Plaintiffs' claims are "founded directly on rights created by

26  collective bargaining agreements" and/or are substantially dependent on analysis and

27  interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d

28  1506, 1509 (9th Cir. 1991); *see also Caterpillar*, 482 U.S. at 393.  Accordingly,

Plaintiffs' claims are subject to arbitration, not court action. *See Avco Corp.*, 390 U.S. at 561 (finding when a claim is preempted by Section 301, an employee's remedy lies within the CBA).

Plaintiffs assert the following claims: (1) minimum wage violations; (2) pay stub violations; (3) unfair competition; (4) failure to timely pay final wages; (5) failure to provide lawful meal and rest periods; (6) failure to pay overtime and double-time premium wages; and (7) civil penalties under PAGA. These claims—all of which flow from Plaintiffs' fundamental allegation that they are entitled to 24 hours of pay every day under *Mendiola*—<u>cannot</u> be adjudicated without interpretation of numerous CBA provisions that govern Plaintiffs' employment, many of which specifically contemplate and provide for pay beyond employees' typical 12 hour shifts.

The applicable CBAs contain specific language governing time worked, wages, overtime (including specific language regarding pay for time worked in excess of 12 hours), and meal and rest periods. Resolution of Plaintiffs' claims will require the Court to interpret, <u>at minimum</u>, the following provisions:

<u>Wages, Hours and Overtime</u>. The CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to pay for overtime, show-up time, excess hours, call-outs and special shifts. Swanson Dec., ¶5; Exh. 1, pp. 7-12; Exh. 2, pp. 8–14.[4] The focus of Plaintiffs' claims is that they are paid for 12 hours per day while on a platform, but are entitled to be compensated for all hours spent on a platform (an additional 12 hours) based on the allegation that they are under employer control during those times.[5] But <u>the CBAs</u>

---

[4] Plaintiffs allege a minimum wage claim, but functionally, in light of Plaintiffs' overtime claim and the already-existing CBA provisions requiring overtime to be paid for all hours over 12 in a day, Plaintiffs' minimum wage claim is an overtime claim.

[5] "Plaintiffs worked on an oil platform off of the California coastal waters. Their shift typically lasted seven days. They received pay for only 12 hours each day while on the oil platform. They

1  expressly provide for overtime pay for "Excess Hours," including pay for all hours

2  worked "in excess of twelve (12) hours in a day." *Id.*, Exh. 1, p. 10, §14.5; Exh. 2,

3  p. 12, § 15.5.  The plain language of the parties agreement demonstrates that in

4  negotiating the CBAs, the parties' contemplated the particular circumstances

5  surrounding an employee's work schedule: specifically, that employees would

6  typically work 12 hours per day, that they would be paid for those 12 hours, and that

7  they would be paid for hours worked in excess of those 12 hours if required or asked

8  to do so by the Employer.  Accordingly, as the CBAs expressly contemplate overtime

9  pay for work beyond 12 hours in a day, determining whether employees are entitled to

10  such pay requires interpretation of the CBAs.

11      <u>Meal and Rest Periods</u>.  The CBAs provide for meal and rest periods, and

12  expressly lay out the conditions under which employees are entitled to such breaks.

13  *Id.*, Exh. 1, pp. 11-12; §§14.12-14.15; Exh. 2, p. 13, §§ 15.12–15.15.  Accordingly,

14  these provisions of the CBAs will require interpretation in order to determine what

15  additional breaks, if any, Plaintiffs or class members would be entitled to.

16      Additionally, as discussed in further detail below, interpretation of the CBAs is

17  critical as Plaintiffs are exempt from California's rules regarding overtime, alternate

18  workweeks and meal periods under Labor Code section 514 and Wage Order 16.

19  Thus, Plaintiffs' overtime claim—the heart of Plaintiffs' lawsuit—as well as his meal

20  period claim, are based exclusively in rights conferred by the CBAs, <u>not state law</u>,

21  thereby requiring interpretation of the CBA and subjecting the claims to Section 301

22  preemption.  *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)

23  (overtime claim preempted by § 301 "[b]ecause the collective bargaining agreement

24  must be interpreted to determine whether the [CBA] provides for premium wage rates

25  for overtime work and, therefore, whether California's overtime exemption provision

26  applies").

27  _____

28  did not receive any compensation for 12 hours while on the platform each day.  They could not
    reasonably leave the platform during [their] seven-day shift." FAC, ¶ 13.

-8-

**2.    Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Failed to Grieve or Arbitrate Their Preempted Claims Prior to Filing This Action**

Where a claim is preempted by Section 301, an employee's remedies lie exclusively within the collective bargaining agreement. As such, for Section 301 claims to survive dismissal, a plaintiff must adequately plead exhaustion of any grievance procedure set forth in the collective bargaining agreement. *United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). Alternatively, a plaintiff must allege that he was prevented from exhausting the grievance procedure due to lack of fair representation, and must name the union as a defendant. *Jackson v. Southern California Gas, Co.*, 881 F.2d at 646 (9th Cir. 1989) (affirming dismissal of preempted claims where plaintiff failed to exhaust contractual grievance procedures and failed to allege breach of fair representation); *see also Young*, 830 F.2d at 1002 (affirming dismissal of preempted claims where plaintiff failed to exhaust the grievance procedure); *Heath v. AT&T Corp.*, 2005 WL 2206498 at *6 (N.D. Cal., Sept. 12, 2005) (re-characterized Section 301 claims dismissed because plaintiff failed to exhaust contractual grievance procedures).

Here, both CBAs covering putative class members—Section 14 of the Maintenance & Construction CBA, and Section 13 of the Operations CBA—contain a broad, mandatory and binding arbitration provision requiring grievance and arbitration of alleged violations of "any of the terms of [the] Agreement[s]."[6] These provisions constitute the <u>mandatory</u> mechanism to settle disputes arising between union members (through the Union) and Defendant. The CBA arbitration provisions

---

[6] The CBAs state in part: "[g]rievances shall be settled in accordance with the following procedures: The Union shall have the right to present grievances affecting it and its members to the Company . . . . If the Union believes it and its members have been injured or treated unfairly in the application of **any of the terms of this Agreement**, it may seek redress [by filing a grievance.] . . . For the purpose of settling disputes arising between parties in regard to the application of this Agreement, or the meaning of any part thereof, and to arbitrate grievances not settled under Paragraph "a" of this grievance procedure, the Union or Company may submit grievances to the Board of Arbitration . . . . The decision of the Board of Arbitration shall be final and binding upon both parties. . . ." Swanson Dec., ¶5; Exh. 1, p. 9, §§ 13.4-13.5; Exh. 2, pp. 10-11, §§ 14.4-14.5 (emphasis added).

DEFENDANT'S MOTION TO DISMISS

require all disputes arising under the CBAs to be grieved and arbitrated, including the disputes in this case: the alleged overtime owed to employees for hours beyond 12 in each 24 hour day spent on an oil platform, meal and rest periods, and Plaintiffs' various derivative claims, all of which flow directly from provisions of the CBAs laying out the terms and conditions of employment for Irwin's employees.

Numerous courts, including the U.S. Supreme Court, have recognized the benefit of extra-judicial dispute resolution, and affirmed the ability of labor unions to enter into arbitration agreements on behalf of their members as part of a collectively bargained agreement. An employer may very well give other concessions in exchange for obtaining an arbitration agreement, just as a union gives the concession of an arbitration agreement in exchange for other benefits, like potentially higher wages or better healthcare benefits. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257(2009) ("[I]n any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange."); *United Food & Commercial Workers v. Foster Poultry*, 74 F.3d 169, 173 (9th Cir. 1995); *Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 180 (1961). State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 124, fn. 18 (1994). Here, the parties <u>have</u> so agreed, given the broad arbitration provision noted above (as well as the specific arbitration provision discussed below), and the claims are therefore subject to arbitration.

Because Plaintiffs have failed to exhaust the contractual grievance procedure, Plaintiffs' claims must be dismissed as subject to arbitration.

**B.    Plaintiffs' Claims Must Be Dismissed Because They Failed to Exhaust Their Exclusive Contractual Remedies**

Even in the event the general arbitration provision discussed above is not sufficient to compel arbitration of Plaintiffs' claims in this matter, the claims must

still be arbitrated, as Irwin and the Union entered into a *clear and unmistakable* agreement to *exclusively* arbitrate any alleged violation of Wage Order 16, which directly and completely encompasses Plaintiffs' claims in this lawsuit.

### 1. The CBAs Contain an Exclusive Mandatory Arbitration Agreement

A collectively bargained agreement to grieve and arbitrate statutory claims must be enforced where it is "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998); *see also 14 Penn Plaza*, 556 U.S. at 254 (2009); *Metropolitan Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983). That is the case here: the CBAs clearly and unmistakably provide for grievance and arbitration of the exact disputes arising in this case. In addition to the broad arbitration provision requiring grievance and arbitration of alleged violations "of any of the terms of this Agreement," discussed above, both CBAs contain clear and unmistakable specific, exclusive, and mandatory provisions expressly requiring grievance and arbitration of any dispute arising under Wage Order 16:

> The parties to this Agreement recognize and agree that Industrial Wage Order 16-2001 cover[s] the Company's operation and recognize the applicability of and incorporate the provisions of Industrial Wage Order 16-2001, or any Industrial Welfare Commission wage order determined to be applicable, to work performed under this Agreement. **Any alleged violation of any applicable wage order shall be resolved exclusively under and in accordance with the procedure for settlement of grievances and disputes set forth in this Agreement**.

Swanson Dec., ¶5; Exh. 1, p. 11, § 14.11; Exh 2, p. 13, § 15.11.  Accordingly, the parties have expressly agreed to arbitrate any disputes arising under Wage Order 16—which terms include, amongst other items, overtime, alternate workweeks and meal periods. RJN, ¶ 3; Exh. 3, pp. 3-7.

Plaintiffs' first (minimum wage) and sixth (overtime) causes of action: these claims are the heart of Plaintiffs' lawsuit and allege that class members should have been paid for all 24 hours in every day spent on an offshore oil platform. However, the CBAs expressly provide for wages, as well as any overtime or other additional

DEFENDANT'S MOTION TO DISMISS

pay employees receive, including rates of pay for hours worked in excess of 12 in a day.  Swanson Dec., ¶5; Exh. 1, pp. 10-12; Art. 14; Exh. 2, pp. 11–14, Art. 15. Excess hours in a day could be worked in a variety of ways that are specifically contemplated in the CBAs, including, for example, through "Call Outs," where an employee is asked to work outside his normal working hours; or "Overtime," where an employee is required to work beyond his regular shift, or "Special Shifts," which may require working a different or modified shift as compared to the employee's regular schedule.  *Id.*  In addition to falling within the general dispute resolution provision discussed above, both minimum wage and overtime requirements are expressly included in Wage Order 16 (RJN; Ex. 3, pp. 3-5, §§ 3 & 4), and are therefore also clearly and unmistakably subject to the specific exclusive mandatory provision requiring arbitration of disputes under Wage Order 16.  Accordingly, Plaintiffs' first and sixth causes of action were required to be grieved and arbitrated.

Plaintiffs' fifth cause of action—that they were not provided meal and rest periods—is similarly governed by the mandatory dispute resolution provision, as the CBA specifically requires employees be given meal and rest periods.  Swanson Dec., ¶5; Exh. 1, pp. 11-12, §§ 15.12-15.13; Exh. 2, pp. 13-14, §§ 15.12-15.13. Additionally, meal and periods are express subjects of Wage Order 16 (RJN, ¶3, Exh. 3, p. 7, §§ 10 & 11), and have been left to the parties to a collective bargaining agreement to negotiate.  They are therefore also subject to mandatory arbitration under Plaintiffs' clear and unmistakable agreement to do so.

Plaintiffs' fourth cause of action—that they were not timely paid all wages due upon termination—is entirely derivative of Plaintiffs' first, fifth and sixth causes of action, as the alleged violation flows exclusively from Plaintiffs' allegations that Defendant "failed to pay . . . minimum wage, overtime, meal and rest period, and doubletime wages" (all of which, as discussed above, were expressly required to be arbitrated as they are all subjects of Wage Order 16).  FAC, ¶ 40.  Accordingly, Plaintiffs' fourth cause of action was required to be grieved and arbitrated.

-12-

Similarly, Plaintiffs' second and third causes of action—for pay stub violations and unfair competition—are both entirely derivative of Plaintiffs' first, fifth and sixth causes of action. FAC, ¶¶ 29 & 33. Accordingly, both Plaintiffs' second and third causes of action were required to be grieved and arbitrated.

Finally, Plaintiffs' seventh cause of action—for civil penalties under PAGA—is based entirely on Plaintiffs' other alleged violations discussed herein, all of which Plaintiffs were required to grieve and arbitrate. Plaintiffs may argue that the California Supreme Court's decision in *Iskanian v. CLS Transportation Los* Angeles, 59 Cal.4th 348 (2014), allows them to proceed with their PAGA claim even if the remaining claims in the action are dismissed for their failure to grieve and arbitrate them. But the *Iskanian* decision is grounded in a state court's analysis of federal law (the FAA); and as a result, this federal Court is not bound by it. *See, e.g., Vandervere v. Lloyd*, 644 F.3d 957, 964 (9th Cir. 2011) ("As to a question of federal law . . . we owe no deference to state courts."). Federal decisions have held that PAGA claims are arbitrable, and that the Federal Arbitration Act ("FAA," 9 U.S.C. § 1, *et seq.*) preempts any effort at the state level to protect a particular kind of claim from arbitration. *See, e.g., Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011); *Luchini v. CarMax, Inc.*, 2012 U.S. Dist. LEXIS 157253, 8 (E.D. Cal. 2012). Additionally, *Iskanian* interprets the Federal Arbitration Act ("FAA")—not federal labor law. It has long been well settled law, prior to PAGA, that wage claims requiring interpretation of a CBA are preempted (*see, e.g., Livadas*, 512 U.S. at 124) and that a statutory claim may be waived in a CBA so long as the waiver is clear and unmistakable (*see, e.g. Metropolitan Edison*, 460 US. at 708). Accordingly, Plaintiffs' PAGA claim should also be dismissed.

## 2. Despite A Clear and Unmistakable Agreement To Grieve and Arbitrate Their Claims, Plaintiffs Failed To Do So, And Accordingly Their Claims Must Be Dismissed

Plaintiffs' claims were all required to be grieved and arbitrated under the applicable CBAs.  Specifically, the CBAs reflect a specific, clear and unmistakable agreement to grieve and arbitrate any alleged disputes of Wage Order 16 (which encompasses all of Plaintiffs' claims here).  Plaintiffs' did not grieve or arbitrate any claims, nor do they even allege to have done so.  Swanson Dec., ¶ 7.  Accordingly, their claims must be dismissed.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) ([A]n employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."); *see also Cone v. Union Oil Co. of Cal.*, 129 Cal. App. 2d 558, 563 (1954) ("[A] party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in absence of facts which would excuse him from pursuing such remedies.")

## C. Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Claims Are Precluded By Labor Code Section 514 and Wage Order 16

Even if Plaintiffs were not required to grieve and arbitrate their claims, and even if Plaintiffs' claims were not preempted by Section 301 of the LMRA, the claims must still be dismissed because Plaintiffs are exempt from California overtime and meal period rules under Labor Code section 514 and Wage Order 16.

Labor Code section 514 provides the overtime requirements of the Labor Code do not apply to employees covered by a CBA, so long as the CBA "provides for the wages, hours of work, and working conditions of the employees, . . . premium wage rates for all overtime hours worked and a regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage."

Here, as discussed in detail above, the CBAs meet those requirements: they provide for wages, hours and working conditions, premium pay for all overtime, and

-14-

expressly pay Plaintiffs and all other putative class members "at least 30% over the minimum wage for the State of California." Swanson Dec., ¶5; Exh. 1, p. 22, Schedule "A";  Exh. 2, pp. 27-28, Schedule "B".  Accordingly, Plaintiffs are exempt from all California overtime requirements of Labor Code sections 510 and 511 pursuant to Labor Code section 514.

As noted above, the CBAs also expressly incorporate Wage Order 16:

> The parties to this Agreement recognize and agree that Industrial Wage Order 16-2001 cover[s] the Company's operation and recognize the applicability of and incorporate the provisions of Industrial Wage Order 16-2001, or any Industrial Welfare Commission wage order determined to be applicable, to work performed under this Agreement.

*Id.*, Exh. 1, p. 11, §14.11; Exh. 2,  p. 13, § 15.11.  Wage Order 16 expands upon Labor Code section 514, and provides that Wage Order 16's overtime, alternate workweek and meal period requirements (in addition to election procedures, combination of overtime rates, and nondiscrimination) do not apply to employees so long as the employees are covered by a CBA that meets the requirements of Labor Code section 514.  RJN, ¶3; Exh. 3, pp. 3 & 7, §§ 3 & 10.  Here, as noted above, the CBAs unquestionably meet those criteria.  Wage Order 16 also provides that its rest period requirements "shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection." *Id.*, p. 7, § 11(E).  The CBAs <u>do</u> provide equivalent protection (both the CBAs and Wage Order 16 require a 10 minute break every four hours worked).  As a result, Plaintiffs are exempt from overtime and alternate workweek requirements under both Labor Code section 514 and Wage Order 16; and from meal and rest period requirements under Wage Order 16.

As to the above exemption, California state courts agree.  Recently, in *Vranish v. ExxonMobil Corp.*, 223 Cal. App. 4th 103 (2014), the California Court of Appeals affirmed that overtime requirements do not apply to employees covered under an agreement that meets the requirements of Labor Code section 514. *Id.*, 108–10.  In

DEFENDANT'S MOTION TO DISMISS

*Vranish*, the CBA covering the plaintiffs defined overtime as "hours worked over 40 hours in a workweek or over 12 hours in a workday." *Id.*  The court found that the parties to a CBA may agree as to what constitutes overtime, so long as the CBA meets the requirements of Labor Code section 514.  Federal courts have reached the same conclusion.  *See, e.g.*, *Kilbourne v. Coca-Cola Co.*, 2014 U.S. Dist. LEXIS 124439 (S.D. Cal. July 11, 2014) (holding the parties to a CBA may define what constitutes overtime under Labor Code section 514 so long as employees receive more than 30 percent over minimum wage); *Cathcart v. Sara Lee Corp.*, 2011 U.S. Dist. LEXIS 137352 (N.D. Cal. Nov. 30, 2011) (same).

Thus, even if Plaintiffs were not required to grieve and arbitrate their claims, their claims are still required to be dismissed, because they are barred by Labor Code section 514 and Wage Order 16.

**D.      Plaintiffs' Claims Should Be Dismissed for the Separate and Independent Reason That Plaintiffs' State Law Claims Have No Force or Effect Under OCSLA And Therefore Fail to State a Claim Upon Which Relief May Be Granted**

In addition to Plaintiffs' failure to grieve or arbitrate their claims, Plaintiffs' claims must be dismissed because they separately fail to state a valid state law claim because state law does not apply.  This is because Plaintiffs allegations of injury are solely based on state law.  However, when state law conflicts with otherwise applicable federal law, federal law applies to employees when working in a federal jurisdiction under the Outer Continental Shelf Lands Act, ("OCSLA," 43 U.S.C § 1331 *et. seq.*).

**1.      Each of Plaintiffs' Claims Arise from an OCSLA Situs, Rendering Federal Law as the Rule of Decision**

OCSLA defines the Outer Continental Shelf as "all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 2 of the Submerged Lands Act . . . and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control." 43

-16-

1   U.S.C. § 1331(a).  Subject to certain exceptions not applicable here, section 2 of the

2   Submerged Lands Act defines "lands beneath navigable waters" as "all lands

3   permanently or periodically covered by tidal waters up to but not above the line of

4   mean high tide and seaward to a line three geographical miles distant from the coast

5   line of each [] State." 43 U.S.C. § 1301(a)(2).  Therefore, the Outer Continental Shelf

6   generally includes all submerged lands within the territorial waters of the United

7   States lying more than three miles from the coast of a state. *See Valladolid v. Pac.*

8   *Operations Offshore, LLP*, 604 F.3d 1126, 1130 (9th Cir. 2010) ("State jurisdiction

9   over offshore lands generally extends three miles from the coast line"); *see also Nome*

10  *Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 814 (9th Cir. 1995) ("The outer continental

11  shelf is certain land on the bed of the sea more than three miles seaward from the

12  coastline.").

13       43 U.S.C. § 1333(a)(1) of OCSLA provides:

14       The Constitution and laws and civil and political jurisdiction of the
         United States are hereby extended to the subsoil and seabed of the outer
15       Continental Shelf and to all artificial islands, and all installations and
         other devices permanently or temporarily attached to the seabed, which
16       may be erected thereon for the purpose of exploring for, developing, or
         producing resources therefrom, or any such installation or other device
17       (other than a ship or vessel) for the purpose of transporting such
         resources, to the same extent as if the outer Continental Shelf were an
18       area of exclusive Federal jurisdiction located within a State.

19  §1333(a)(1) in effect declares the Outer Continental Shelf and all artificial islands,

20  installations, and devices attached to it for the purpose of resource exploration,

21  development, or production to be federal enclaves where the laws of the United States

22  govern to the exclusion of the laws of an adjacent state. *See Gulf Offshore Co., Div.*

23  *of Pool Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) ("OCSLA declares the

24  Outer Continental Shelf to be an area of 'exclusive federal jurisdiction.'"); *Rodrigue*

25  *v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 361 (1969) ("The legislative history of

26  [OCSLA] makes it clear that these structures [on the Outer Continental Shelf] were to

27  be treated as islands or as federal enclaves within a landlocked State."); *In re*

28  *Deepwater Horizon*, 745 F.3d 157, 165 (5th Cir. 2014) ("[P]ursuant to OCSLA, '[a]ll

-17-

1  law applicable to the outer Continental Shelf is federal law,' and all cases 'involving

2  events occurring on the Shelf [are] governed by federal law.'").  The Fifth Circuit has

3  explained "the purpose of OCSLA was to allocate to the federal government

4  jurisdiction, control, and power of disposition over the subsoil and seabed of the

5  Outer Continental Shelf," and that the statute "asserts exclusive federal question

6  jurisdiction over the [Outer Continental Shelf] by specifically extending" federal law

7  to the Shelf and certain structures thereon.  *Barker v. Hercules Offshore, Inc.*, 713

8  F.3d 208, 213 (5th Cir. 2013) (internal quotations omitted).

9      Here, Plaintiffs specifically allege that they and the putative class worked on oil

10  platforms located off-shore in the Santa Barbara Channel.  FAC ¶¶ 7 & 13.  These

11  platforms are plainly "artificial islands" or "installations" attached to the seabed,

12  "erected thereon for the purpose of exploring for, developing, or producing resources

13  therefrom." 43 U.S.C. § 1333(a)(1); *see Hollier v. Union Texas Petroleum Corp.*, 972

14  F.2d 662, 664 (5th Cir. 1992) ("It is well established that a platform is an 'artificial

15  island' within the meaning of OCSLA.");  *see also Franks v. Chevron Corp.*, 2007

16  U.S. Dist. LEXIS 61733, 6 (S.D. Tex. 2007); ("Fixed drilling platforms constitute

17  'artificial islands' under OCSLA."); *see also Rodrigue*, 395 U.S. at 361–66 (holding

18  that fixed drilling platforms are governed by OCSLA).  Furthermore, the platforms at

19  issue are undisputedly situated at least three miles from the California coast, and on

20  the Outer Continental Shelf.[7]

21      It is also clear that Plaintiffs' claims arise entirely out of their and the putative

22  class's activities on the OCSLA oil platforms referenced in the FAC.  The central

23  allegation underlying each of the seven pleaded causes of action is that Plaintiffs and

24  the putative class were entitled to have all of the time spent on the oil platforms

25  

26  [7] *See* Federal Rule of Evidence 201(b) (court may take judicial notice of facts that are "generally
known within the trial court's territorial jurisdiction" or "can be accurately and readily determined
27  from sources whose accuracy cannot reasonably be questioned.").  As discussed above, Defendant
requests the Court take judicial notice of maps and platform information generated by the Bureau of
28  Safety and Environmental Enforcement (a government agency).

treated as compensable under *California state law. See, e.g.*, FAC ¶¶ 13 & 15–16;

*see Barker*, 713 F.3d at 213 (OCSLA applies where "(1) the facts underlying the

complaint occurred on the proper situs; (2) the plaintiff's employment furthered

mineral development on the OCS; and (3) the plaintiff's injury would not have

occurred but for his employment."). For these reasons, OCSLA creates exclusive

federal jurisdiction over this action, and Plaintiffs' state law claims have no force or

effect unless incorporated as surrogate federal law by 43 U.S.C. §1333(a)(2)(A).

> **2.** **43 U.S.C. §1333(a)(2)(A) Does Not Incorporate Plaintiffs' State Claims As Surrogate Federal Law, Because The California Law Upon Which They Are Premised Is Not "Applicable" And Is "Inconsistent" With The Federal Fair Labor Standards Act**

Although the Outer Continental Shelf is governed exclusively by federal law,

43 U.S.C. §1333(a)(2)(A) adopts as "surrogate" federal law "the civil and criminal

laws of each adjacent State now in effect or hereafter adopted," <u>but only to the extent

those laws are "applicable and not inconsistent with this Act or with other Federal

laws and regulations of the Secretary now in effect or hereafter adopted."</u> *See Gulf

Offshore Co.*, 453 U.S. at 480 ("[T]o fill the substantial 'gaps' in the coverage of

federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the

adjacent States as surrogate federal law.")

The "applicable and not inconsistent" language of 43 U.S.C. § 1333(a)(2)(A)

permits the incorporation of state law as federal law on an OCSLA situs only in the

limited circumstance where adoption of state law is "necessary" to fill a "significant

void or gap" in federal law. *Continental Oil Co. v. London S.S. Owners' Mut. Ins.

Assoc.*, 417 F.2d 1030, 1036 (5th Cir. 1969).[8] The issue in *Continental Oil* was the

applicability of a Louisiana statute permitting a direct action against an insurer prior

to obtaining a judgment against the insured in a case involving an OCSLA platform.

---

[8] Due to the paucity of Ninth Circuit cases applying OCSLA, Defendant relies on Fifth Circuit decisions as persuasive authority. The Fifth Circuit is a jurisdiction with substantial expertise and well-developed body of law in OCSLA matters as a result of the extensive mineral exploration and development in the Gulf of Mexico.

1   *Id.* at 1031–32.  In declining to adopt the statute as surrogate federal law, the court

2   rejected the argument that 43 U.S.C. § 1333(a)(2)(A) intended to "export the whole

3   body of adjacent law onto the Outer Continental Shelf for automatic application to

4   any and all occurrences" unless inconsistent with OCSLA or other federal law.  *Id.* at

5   1035–36.  The court held this interpretation gave too much weight to the term "not

6   inconsistent" and not enough to "applicable" and the purpose and history of OCSLA.

7   *Id.* at 1035–40.  "[T]he deliberate choice of federal law, federally administered" on

8   the Outer Continental Shelf "requires that 'applicable' be read in terms of . . .

9   necessity to fill a significant void or gap."  *Id.* at 1036.  The court held that the

10  Louisiana statute was unincorporated by 43 U.S.C. § 1333(a)(2)(A), even though it

11  would have "afford[ed] some gain or benefit or advantage not available if state law

12  [could] not be invoked."  *Id.* at 1035.

13        Other cases have followed *Continental Oil* and reached similar results.  In

14  *Nations v. Morris*, 483 F.2d 577 (5th Cir. 1973), the court held that the Louisiana

15  direct action statute at issue in *Continental Oil* did not apply to a case arising out of a

16  work-related injury on a drilling rig on the Outer Continental Shelf, because the

17  Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") provided a

18  federal remedy and there were no gaps to fill.  *Id.* at 589–90; *see also Couvillion v.

19  Nicklos Oil & Gas Co.*, 671 F. Supp. 446 (E.D. La. 1987).  Under *Continental Oil*, "in

20  order for a state law provision to be incorporated into OCSLA, the provision must not

21  only be 'applicable,' in the sense that the state law would apply in the absence of a

22  federal scheme, but it must be necessary, in the sense that it fills some 'void' or 'gaps'

23  in OCSLA."  *Couvillion,* 671 F. Supp at 448, fn. 2.  In *Le Sassier v. Chevron USA,

24  Inc.*, 776 F.2d 506 (5th Cir. 1985), the court held that an OCSLA platform worker

25  who was allegedly terminated from his employment for claiming benefits under the

26  LHWCA could not maintain a state law retaliatory discharge claim, because federal

27  law already provided a remedy for retaliation.  The *Le Sassier* Court applied

28  *Continental Oil*'s "necessity" requirement and rejected the plaintiff's argument that

-20-

DEFENDANT'S MOTION TO DISMISS

"state provisions which merely duplicate or supplement federal provisions are not 'inconsistent' or otherwise barred, even if parallel state provisions result in superior awards." *Id.* at 508. And in *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 255 (9th Cir. 1973), the Ninth Circuit cited *Continental Oil* with approval while holding that 43 U.S.C. §1333(a)(2)(A) does not adopt state law for "every occurrence arising out of operations conducted on a fixed platform attached to the outer Continental Shelf."

Here, the Fair Labor Standards Act of 1938 ("FLSA," 29 U.S.C. § 201 et seq.) is a comprehensive federal statute providing for the payment of minimum wages and overtime for hours worked, leaving no gap for Plaintiffs' state law causes of action to fill. 29 U.S.C. § 206 (requirement payment of minimum wages); 29 U.S.C. § 207 (requiring payment of overtime wages); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees . . ."). Every one of Plaintiffs' causes of action is premised on the theory that all of the time they and the putative class spend on an oil platform is compensable under California state wage and hour law. However, the FLSA requires payment for all hours worked, and its comprehensive implementing regulations explain what hours are compensable when an employee resides on his employer's premises or is unable to leave; the precise question presented in this case. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) ("It is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked.'"); *see also* 29 CFR 785.22 (allowing employees who are on-duty for more than 24 consecutive hours to agree to exclude bona-fide meal breaks and 8 hours of sleep from their hours worked); *see also* 29 CFR 785.23 (explaining hours worked for an employee who resides on his or her employer's premises); *see also* 29 CFR 785.19 (explaining when meal period time may be excluded from hours worked). Because the FLSA covers the situation at issue in this case, it is not necessary to rely on state law to fill any gap or void. Under *Continental Oil* and its progeny, this means federal law governs even though state law might provide Plaintiffs with a "superior award" or

-21-

1  "some gain or benefit or advantage not available if state law can not be invoked." *Le*

2  *Sassier*, 776 F.2d at 508; *Continental Oil*, 417 F.2d at 1035.[9]

3       Moreover, the FLSA is <u>inconsistent</u> with California law in several important

4  respects.  The FAC cites the California Supreme Court's recent decision in *Mendiola*

5  *v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015), for the proposition that all of

6  the time spent on the oil platforms, including sleeping time, constitutes hours worked.

7  But *Mendiola* held that the FLSA regulations governing the hours worked of an

8  employee who resides at his or her employer's premises and the exclusion of sleep

9  time (29 CFR 785.22 and 29 CFR 785.23) are <u>not</u> in accord with California wage and

10  hour law.  *Mendiola*, 60 Cal. 4th at 842–44 & 848–49.  The very cases Plaintiffs' rely

11  on holds that the decision is inconsistent with federal law.  Similarly, in *Seymore v.*

12  *Metson Marine, Inc.*, 194 Cal. App. 4th 361 (2011), the California Court of Appeal

13  declined to follow federal authority holding that a requirement that employees sleep

14  on their employer's premises does not automatically convert the entire time an

15  employee is on the premises into hours worked.  *Id.* at 378–80; *compare with Allen v.*

16  *Atlantic Richfield Co.*, 724 F.2d 1131, 1137 (5th Cir. 1984) and *Rousseau v. Teledyne*

17  *Movible Offshore, Inc.*, 805 F.2d 1245, 1247–49 (5th Cir. 1986) (under FLSA,

18  employees in oil extraction industry required to remain on barges for 14 days at a time

19  are not entitled to compensation for the entire time spent on the barges).  Notably, in

20  *Brigham v. Eugene Water & Electric Bd.*, 357 F.3d 931, 940–41 (9th Cir. 2004), the

21  Ninth Circuit relied on 29 C.F.R. § 785.23—the same regulation the California

22  Supreme Court specifically declined to incorporate into California law in *Mendiola*—

23  in support of its holding that employees working and residing on their employer's

24  ───────────────

25  [9] Following *Continental Oil*, the Fifth Circuit developed a three factor test for determining whether federal maritime law or adopted state law applies to a case arising on the Outer Continental Shelf.

26  This test applies state law only when three conditions are met: "(1) The controversy must arise on a situs covered by OCSLA . . . (2) Federal maritime law must not apply of its own force. (3) The state

27  law must not be inconsistent with Federal law."  *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir 1990)  Reasoning from this test by analogy in this non-maritime

28  context, state law is not adopted by 43 U.S.C. § 1333(a)(2)(A) if the FLSA applies of its own force.

premises in national forest were <u>not</u> required to be paid for 24 hours each day under federal law.[10]

The decision in *Mersnick v. USProtect Corp.*, 2006 U.S. Dist. LEXIS 94408, 2006 WL 3734396 (N.D. Cal. 2006) is closely on point. In *Mersnick*, the court held that a hodgepodge of state wage and hour claims similar to those presented here were inapplicable in a federal enclave, because the claims were inconsistent with the FLSA. *Id.* at *5–11. *Mersnick* is analogous to this case, because OCSLA declares that the Outer Continental Shelf and the platforms attached to it are to be treated as though they are federal enclaves. 43 U.S.C. § 1333(a)(1); *see also Rodrigue*, 395 U.S. at 361 ("The legislative history of OCSLA makes it clear that these structures [drilling platforms] were to be treated as islands or as federal enclaves within a landlocked State . . ."). And, as is the case with the Outer Continental Shelf, federal law is generally exclusive in an inland federal enclave. *See Paul v. United States*, 371 U.S. 245, 268 (1963) (subject to certain exceptions "a State may not legislate with respect to a federal enclave"). *Mersnick* held that although several of the plaintiff's state law claims were based on sections of the California Labor Code that existed at the time of the transfer of the relevant land to the federal government, they nevertheless could not be enforced because they created obligations inconsistent with the FLSA. *Mersnick* at *7-8.[11]

---

[10] *See also Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 976–77 (1995) (holding employee considered on-duty under California law during a meal break in which he or she cannot leave his or her employer's premises, notwithstanding 29 CFR 785.19(b), which provides that under the FLSA: "It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during [a bona-fide] meal period."); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005) (holding unlike the FLSA, California law does not permit employer to average employee's wages earned in a week across all hours worked in that week to determine whether employee has received minimum wage, noting "the minimum wage provisions of the FLSA differ significantly from California's minimum wage law.")

[11] The *Mersnick* court specifically found that claims based on California Labor Code §§ 201–203 (Plaintiffs' fourth cause of action) were inconsistent with the FLSA, and dismissed a claim based on California Business and Professions Code §17200 (Plaintiffs' third cause of action) on federal enclave grounds. *Mersnick*, at *7-8, 10.

1    As in *Mersnick*, Plaintiffs' state causes of action in the FAC can only be

2 enforced to the extent they are "not inconsistent" with federal law.  Because the FLSA

3 creates a scheme inconsistent with California wage and hour law, that law cannot

4 apply in either an inland federal enclave, like in *Mersnick*, or on a platform subject to

5 OCSLA, as is the case here.  *See also George v. UXB Int'l, Inc.*, 1996 U.S. Dist.

6 LEXIS 22292 at *9; 1996 WL 241624 at *3 (N.D. Cal. 1996) (holding a California

7 wage order governing overtime "conflicts with the federal Fair Labor Standards Act"

8 and cannot be enforced in a federal enclave).[12]

9    For these reasons, 43 U.S.C. §1333(a)(2)(A) does not adopt Plaintiffs' state law

10 causes of action as surrogate federal law.  As a result, state law, including the

11 *Mendiola* decision—the entire basis for Plaintiffs' complaint—does not apply.  Under

12 the Circuit Court decisions cited above in *Rousseau*, *Allen*, and *Brigham*, as well as

13 29 C.F.R. § 785.23, Plaintiffs are <u>not</u> entitled to be paid simply by virtue of the fact

14 that they remain on an oil platform outside of their 12-hour shift.  The FAC therefore

15 fails to state a claim upon which relief can be granted.

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22

23 [12] Plaintiffs may argue the Ninth Circuit's decision in *Pacific Merchant Shipping Ass'n v. Aubry*,
24 918 F.2d 1409 (9th Cir. 1990) and the California Supreme Court's decision in *Tidewater Marine
Western, Inc. v. Bradshaw*, 14 Cal .4th 557 (1996) permit the application of California wage and
25 hour law to oil platforms situated on the Outer Continental Shelf.  Both cases held that the FLSA
and federal admiralty law do not generally preempt California's overtime laws as applied to vessels
26 in the Santa Barbara Channel.  But neither case involved an OCSLA situs and thus neither had
occasion to address the statute's extension of exclusive federal jurisdiction to platforms attached to
27 the seabed of the Outer Continental Shelf.  *See Cisneros v. Harrington*, 2012 U.S. Dist. LEXIS
108348, 79 (C.D. Cal. 2012) ("It is axiomatic that cases are not authority for propositions not
28 considered.").  *Pacific Merchant* and *Tidewater* therefore do not control the outcome of this motion.

-24-

## IV.    CONCLUSION

For the foregoing reasons, Defendant requests this Court dismiss the Complaint in its entirety, with prejudice, pursuant to FRCP 12(b).

Dated:  May 29, 2015                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    RONALD J. HOLLAND
                    ELLEN M. BRONCHETTI
                    MATTHEW C. LEWIS

                    Attorneys for Defendant.
                    IRWIN INDUSTRIES, INC.

-25-

SMRH:437431176.12                                          DEFENDANT'S MOTION TO DISMISS