Michael A. Strauss, SBN 246718
mike@palaylaw.com
Andrew C. Ellison, SBN 283884
andrew@palaylaw.com
**STRAUSS & PALAY, APC**
121 North Fir Street, Suite F
Ventura, CA  93001
Telephone:  (805) 641-6600
Facsimile:   (805) 641-6607

Anthony R. Strauss, SBN 72842
ars@strausslawgroup.com
Aris E. Karakalos, SBN 240802
aek@strausslawgroup.com
**STRAUSS LAW GROUP, APC**
121 North Fir Street, Suite F
Ventura, CA  93001
Telephone:  (805) 641-9992
Facsimile:   (805) 641-9993

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL CURTIS, an individual; ARTHUR WILLIAMS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> IRWIN INDUSTRIES, INC., a California corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.:  2:15-cv-02480 <br><br> *Assigned to: Otis D. Wright II* <br><br> <u>CLASS ACTION</u> <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> *(Removed from Santa Barbara County Superior Court Case No. 1487049)* <br><br> [Complaint filed:  February 17, 2015] <br><br> Date:  July 27, 2015 <br> Time:  1:30 p.m. <br> Judge:  Hon. Otis D. Wright II <br> Courtroom:  11 |

## **TABLE OF CONTENTS**

**I.**    INTRODUCTION ...........................................................................................1

**II.**   PROCEDURAL HISTORY ............................................................................1

**III.**  LEGAL DISCUSSION ..................................................................................2

**A.** <u>Plaintiffs' Statutory Claims Should Not Be Forced Into Arbitration Or</u>
     <u>Otherwise Dismissed For Failure To Follow The CBAs' Grievance Procedures.</u> .2

1. The CBAs Do Not Apply To Any of The Putative Class Members. .....................2

2. Arbitration of Statutory Claims Is Generally Disfavored. ....................................2

3. The CBA Does Not "Clearly And Unmistakably" Reference
   Any Of The Statutory Claims Raised In Plaintiffs' FAC. ....................................4

4. Plaintiffs' Minimum Wage Claims Are Not "Derivative" Of
   Their Overtime Claims. .........................................................................................4

5. California Law Precludes PAGA Claims From Being Arbitrated. ........................5

6. Plaintiffs' Failure To Follow The Grievance Procedures Does
   Not Mandate Dismissal Of Their Claims. ............................................................5

7. Plaintiffs' Overtime and Meal Break Claims Are Not Precluded by
   Labor Code 514. ...................................................................................................7

**B.** <u>California Law Applies To The Outer Continental Shelf.</u> ...................................8

1. The FLSA Is Not A "Comprehensive" Body Of Wage-And-Hour Law. ...............8

2. The FLSA Allows Concurrent State Regulation Of Labor Standards. ..................9

3. The OCSLA Adopts State Law To Fill In The Gaps In Federal Statutes. .........10

4. The OCSLA Does Not Permit The Filling In Of Gaps In Federal Statutes
   With Federal Common Law. ...............................................................................11

5. Defendant's Authority Is Misplaced. ..................................................................12

6. The Federal Enclave Cases Are Inapplicable. ....................................................14

7. None Of Plaintiffs' Claims Are Inconsistent With The FLSA. ..........................15

   i.   Plaintiffs' First Cause Of Action For Minimum Wage Violations Is Not
        Inconsistent With The FLSA. ........................................................................15

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ii.  Plaintiffs' Second Cause Of Action For Pay Stub Violations Is Not Inconsistent With The FLSA. ...............................................................22

iii. Plaintiffs' Third Cause Of Action For Unfair Competition Is Not Inconsistent With The FLSA. ...............................................................22

iv. Plaintiffs' Fourth Cause Of Action For The Failure To Timely Pay Wages Is Not Inconsistent With The FLSA. ...............................................................23

v.  Plaintiffs' Fifth Cause Of Action For The Failure To Provide Lawful Meal Periods Is Not Inconsistent With The FLSA. ........................................23

vi. Plaintiffs' Sixth Cause Of Action For The Failure To Pay Overtime And Doubletime Premium Wages Is Not Inconsistent With The FLSA. ..............23

vii. Plaintiffs' Seventh Cause Of Action For PAGA Is Not Inconsistent With The FLSA. .......................................................................24

8.   The CBAs Contemplate The Application Of California Law. .......................25

IV.   CONCLUSION ...............................................................25

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).............................................3, 5

4
*Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir. 1984).......................20

5
*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)....................................6, 9

6
*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*,

7
   403 U.S. 274, 289 (1971) .............................................................9

8
*Armendariz v. Found. Health,* 24 Cal.4th 83 (2000) ......................................6

9
*Armour v. Wantock*, 323 U.S. 126 (1944)........................................................20

10
*Bahramipour v. Citigroup Global Markets, Inc.*, No. C 04-4440 CW,

11
   2006 WL 449132, at *2 (N.D. Cal. Feb. 22, 2006)...........................22, 23

12
*Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (2000) ..........6

13
*Berry v. County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994) ............................21

14
*Bouchard v. Regional Governing Bd. Of Region V Mental*

15
   *Retardation Services*, 939 F.2d 1323 (8th Cir. 1991) ..............................18

16
*Bowers v. Remington Rand, Inc.*, 159 F.2d 114 (7 Cir. 1946).......................25

17
*Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671 (5th Cir. 1991) .............18

18
*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) ..........16

19
Business and Professions Code Section 17200 ................................................6

20
*Chavez v. IBP, Inc.*, 2005 WL 6304840, at *36-37 (E.D. Wash. May 16, 2005).......9, 17

21
*Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) .....................................passim

22
*Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2000)..................2

23
*Continental Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n*,

24
   417 F.2d 1030 (5th Cir. 1969).......................................................12

25
*Cortez v. Purolator Air Filtration Products Company*, 23 Cal. 4th 163 (2000)...........22

26
*Couvillion v. Nicklos Oil & Gas Co.*, 671 F. Supp. 446 (E.D. La. 1987)..............13

27
*CSX Transp., Inc., v. Easterwood*, 507 U.S. 658 (1993).................................9

28

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987) .............................................. 9

*General Elec. Co. v. Porter*, 208 F.2d 805 (1953) ........................................................ 20

*George v. UXB Int'l, Inc.*, 1996 WL 241624 (N.D. Cal. 1996) ..................................... 15

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014)

    cert. denied, 135 S. Ct. 1155 (2015) ..................................................................... 24

*Iskanian v. CLS Transportation Los Angeles*, 59 Cal.4th 348 (2014),

    *cert. denied*, 135 S.Ct. 1155 (2015) ..................................................................... 5

*Kelly v. Lockheed Martin Services Group*, 25 F. Supp. 2d 1 (D. Puerto Rico 1998) ..... 14

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) ........................................... 10

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ......................... 22

*LeSassier v. Chevron USA, Inc.*, 776 F.2d 506 (5th Cir. 1985) ................................... 13

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) .......................................................... 5, 6

*Local 1605 Amalgamated Transit Union, AFL-CIO v.*

    *Cent. Contra Costa Cnty. Transit Auth.*, 73 F. Supp. 2d 1117 (N.D. Cal. 1999) ....... 17

*Lujan v. So. Cal. Gas Co.*, 96 Cal.App.4th 1200 (2002) .............................................. 6

*Martinez v. J. Fletcher Creamer & Son, Inc.*,

    CV 10-0968-PSG, 2010 WL 3359372, *5 (C.D. Cal. Aug. 13, 2010) .................... 3, 4

*Mechanical Contractors Assn. v. Greater Bay Area Assn.*,

    66 Cal.App.4th 672 (1998) ..................................................................................... 6

*Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015) ..........................passim

*Mersnick v. USProtect Corp.*, 2006 WL 3734396 (N.D. Cal. Dec. 18, 2006) ......... 14, 15

*Mesfun v. Hagos*, No. CV 03-02182 MMM (RNBX),

    2005 WL 5956612, at *15 (C.D. Cal. Feb. 16, 2005) ..................................... 17

*Metro. Edison Co. v. NLRB*, 460 U.S. 693 (1983) ...................................................... 3

*Meyer v. Irwin Industries, Inc.*, 723 F.Supp.2d 1237 (2010) .......................................... 5

*Nations v. Morris*, 483 F.2d 577 (5th Cir. 1973) ................................................... 12, 13

*Oppen v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973) .............................................. 14

*Owens v. Local No. 169*, 971 F.2d 347 (9th Cir. 1992) .............................................. 19

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Paul v. United States*, 371 U.S. 245 (1963) ................................................14

*PMSA v.Aubry, 918 F.2d 1409 (9th Cir. 1990)* .....................................10, 15

*Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969) ...........................11

*Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir. 1986)...............20

*Samson v. NAMA Holdings, LLC,* 637 F.3d 915 (9th Cir. 2010)...................25

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ....................................18, 20

*Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100 (S.D. Cal. 2006) ............23

*Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472 (2000) ...................14

*Tennessee Coal, Iron & Railroad Co., v. Muscoda Local No. 123*,

    321 U.S. 590 (1944) ............................................................25

*Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996) .........................15

*Ting v. AT & T*, 319 F.3d 1126, 1136 (9th Cir. 2003)........................................9

*Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 898 (C.D. Cal. 2005)..................22

*United States v. Locke*, 529 U.S. 89 (2000) ................................................9

*Vasquez v. Superior Court*, 80 Cal.App.4th 430 (2000) ...............................3

*Vranish v. ExxonMobil Corp.*, 223 Cal.App.4th 103 (2014) ...........................7

*Wright v. Universal Maritime Service Corp.* 525 U.S. 70 (1998) ...............................3, 4

*Zaborowski v. MHN Government Service, Inc.*,

    936 F.Supp.2d 1145 (N.D. Cal. 2013) ........................................6

**Statutes**

29 U.S.C. § 203 ...........................................................................17

29 U.S.C. § 206 ...........................................................................17

29 U.S.C. § 211 ...........................................................................22

29 U.S.C. § 218 ............................................................................9

33 U.S.C. § 901 ...........................................................................13

33 U.S.C. § 993 ...........................................................................13

43 U.S.C. § 1331 ..........................................................................11

43 U.S.C. § 1333 ..................................................................................................8, 11

Cal. Bus. & Prof. Code § 17208 .........................................................................6

Cal. Civ. Code § 338 ............................................................................................6

Cal. Lab. Code §§ 1173, 1182.11 ........................................................................18

Cal. Lab. Code § 219 ...........................................................................................6

Cal. Lab. Code § 510 ...........................................................................................23

Cal. Lab. Code § 514 ...........................................................................................7, 8

Cal. Lab. Code § 1194 and 1197 .........................................................................16

Cal. Lab. Code § 2699 .........................................................................................20, 24

Section 216 of the FLSA ......................................................................................25

**Rules**

Fed. R. Civ. P. 26 ................................................................................................1

**Regulations**

29 C.F.R. § 785.19 ...............................................................................................23

29 C.F.R. § 785.22 ...............................................................................................19, 20, 21

29 C.F.R. § 785.23 ...............................................................................................17

29 C.F.R. §§ 778.202, 778.203, 778.206, 778.308 ............................................24

8 Cal. Code Regs. § 11040 ..................................................................................19

8 Cal. Code Regs. § 11160 ..................................................................................5, 16, 19

Wage Order 4-2001 ..............................................................................................10

Wage Order 16-2001 ............................................................................................4, 5, 10

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Defendant's motion must be denied because the Outer Continental Shelf Lands Act ("OCSLA") does not preclude the application of California's law to Plaintiffs' Labor Code claims.  The Savings Clause of the FLSA expressly allows states to concurrently regulate wage-and-hour conditions, which makes Plaintiffs' Labor Code claims consistent with the FLSA.  Moreover, Plaintiffs' claims – and specifically the definition of "hours worked" applied under California law – are not inconsistent with the FLSA as a statute, so they may apply under the OCSLA to fill in any gaps in the FLSA, including its incomplete definition of "hours worked."

Defendant's motion must also be denied because the parties contractually agreed to apply California law in the CBAs, which is not precluded by the OCSLA of the FLSA.  Also, Defendant has not articulated how each of Plaintiffs' claims is deficient or may be adjudicated at this point, so Defendant's motion must fail as a matter of law. Finally, with respect to the second issue, the CBAs do not include a "clear and unmistakable" waiver of Plaintiffs rights to litigate each of the alleged Labor Code violations.  In fact, to the contrary, the CBA expressly contemplates the application of California law to any disputes between the parties.

## II.    PROCEDURAL HISTORY

On February 17, 2015 Plaintiffs filed their initial complaint in state court, and stated therein the following causes of action: (1) Minimum Wage Violations; (2) Paystub Violations; (3) Unfair Competition; (4) Failure to Timely Pay Final Wages; (5) Failure to Provide Lawful Meal Periods; and (6) Failure to Pay Overtime and Doubletime Premium Wages. On April 1, 2015, Plaintiffs filed a First Amended Complaint that added a claim for rest break violations to the fifth cause of action and added a seventh cause of action for Civil Penalties under the Private Attorneys General Act of 2004 ("PAGA").  On April 2, Defendant answered, and on April 3, it removed the action to this Court.

III.   **LEGAL DISCUSSION**

A.   <u>**Plaintiffs' Statutory Claims Should Not Be Forced Into Arbitration Or Otherwise Dismissed For Failure To Follow The CBAs' Grievance Procedures.**</u>

1.     **The CBAs Do Not Apply To Any of The Putative Class Members.**

Neither CBA applies to work performed in federal territories. Article II, Section 2.1 of the first CBA covering union members working in Irwin's "Operations Group" ("CBA1") reads:   "The collective bargaining agreement shall be applicable to all employees performing work in the classifications described in Schedule "A" at all work locations located ***throughout California*** where the Company performs work pursuant to this collective bargaining agreement." (emphasis added).

Article II, Section 2.1 of the first CBA covering union members working in Irwin's "Maintenance and Construction" Division ("CBA2") reads: "The collective bargaining agreement shall be applicable to all employees performing work in the classifications described in Schedule "B" at all work locations; listed in Schedule 'A'" (neither Schedule "A" nor Schedule "B" clarify whether the oil platforms worked on by Plaintiffs are covered by this agreement.).

Defendants have taken the position that the putative class members work exclusively on federal land – the Outer Continental Shelf.  [Motion to Dismiss, 18:9-20].  If this is true, the Putative Class Members are not bound by the terms of CBA1 or CBA2, and Defendant's motion to dismiss as it relates Plaintiffs' failure to abide by terms of those CBAs must be denied. Defendant cannot have it both ways.

2.     **Arbitration of Statutory Claims Is Generally Disfavored.**

General California contract law applies here to determine whether the parties formed a valid agreement to arbitrate disputes stemming from violations of California's Labor Code.  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2000). It is well settled that "a grievance is designed to vindicate 'a contractual right under a CBA,' not 'independent statutory rights.'" *Wright v. Universal Maritime Service Corp.*,

1    525 U.S. 70, 80 (1998) (citation omitted).

2         The Supreme Court has held that a court may not infer from a general arbitration
3    agreement that the parties intended to waive the right to litigate a statutorily protected
4    right. *Wright*, 525 U.S. at 80. Any waiver must be "clear and unmistakable." *Metro.*
5    *Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). Courts require a higher showing
6    because "the right to a federal judicial forum is of sufficient importance to be protected
7    against less-than-explicit union waiver" in a collective bargaining agreement. *Wright*,
8    525 U.S. at 80. However, provisions that are "clear and unmistakable" are enforceable.
9    *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009).

10        In determining whether arbitration should be compelled, two issues are
11   paramount: (1) the level of generality of the arbitration clause; and (2) whether the
12   clause explicitly incorporates specific statutory requirements. *Vasquez v. Superior*
13   *Court*, 80 Cal.App.4th 430, 434 (2000). Assuming a CBA applies, the ultimate test is
14   whether the applicable CBA ***expressly*** and ***specifically*** mentions the specific statute at
15   issue. If so, the dispute is likely subject to arbitration. *14 Penn Plaza*, 556 U.S. at 274.
16   If not, the claim proceeds to litigation. *Wright*, 525 U.S. at 80; *See also, Martinez v. J.*
17   *Fletcher Creamer & Son, Inc.,* CV 10-0968-PSG, 2010 WL 3359372, *5 (C.D. Cal.
18   Aug. 13, 2010)(finding no clear and unmistakable agreement to compel arbitration of
19   Labor Code violations where the incorporated wage order did not explicitly reference
20   the relevant statutory provisions).

21        There are two provisions in the CBAs that address arbitration of claims. One is,
22   by Defendants' own admission, "a broad arbitration provision" which covers "any of
23   the terms of [the agreement]." [Motion to Dismiss, 4:3-4; citing CBA1, Art. XIII; CBA
24   2, Art. XIV]. The other, according to Defendant, is "a targeted, specific arbitration
25   provision" which covers "[a]ny and all alleged violation of [Wage Order 16 or] any
26   applicable wage order." [Motion to Dismiss, 4:7-10; citing CBA1, Art. XIV, Section
27   14.11; CBA2, Art. XV, Section 15.11]. Despite Defendant's effort to describe CBA2 as
28   "targeted," neither CBA is specific enough to compel arbitration of Plaintiffs claims.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1      **3.**      **The CBA Does Not "Clearly And Unmistakably" Reference Any Of**

2            **The Statutory Claims Raised In Plaintiffs' FAC.**

3      The CBAs are otherwise void of any specific reference to California Labor Code

4 Sections so as to warrant a finding that Plaintiffs clearly and unmistakably agreed to

5 arbitrate their claims. With respect to overtime, the CBAs both provide that "when

6 employees work overtime hours as defined by the State of California, a premium on all

7 such hours will be paid by the Company" [CBA1, Art. XIV, Section14.8; CBA2, Art.

8 XV, Section 15.8]. With respect to "paid breaks" the CBAs both provide that

9 "[e]mployees are entitled to paid breaks in accordance with California law and

10 Company policy." [CBA1, Art. XIV, Section14.13; CBA2, Art. XV, Section 15.13].

11 With respect to "any alleged violation of any applicable wage order" the CBAs both

12 provide that "[t]he parties to this Agreement recognize and agree that Industrial Wage

13 Order 16-2001 covers the Company's operation and recognize the applicability of an

14 incorporate the provisions of Industrial Wage Order 16-2001, or any Industrial Welfare

15 Commission wage order determined to be applicable, to work performed under this

16 Agreement." [CBA1, Art. XIV, Section14.11; CBA2, Art. XV, Section 15.11].

17      The above provisions are far too general to satisfy the specificity requirements

18 articulated in *Wright* and *Martinez*. Again, for arbitration to be compelled, ***the***

19 ***applicable statute must have been specifically mentioned in the plain terms of the***

20 ***CBA***. None of the statutes that Plaintiffs' claims fall under are expressly mentioned in

21 the CBAs. The only provision referenced with specificity in the CBAs is Wage Order

22 16-2001. But as expressed in *Martinez* incorporation by reference is too far removed

23 ("one step removed from their alleged incorporation in the CBA") to be considered a

24 "clear and unmistakable" waiver.

25      **4.**      **Plaintiffs' Minimum Wage Claims Are Not "Derivative" Of Their**

26            **Overtime Claims.**

27      If the Court concludes that Plaintiffs' overtime claim must be arbitrated, it does

28 not follow that Plaintiffs' minimum wage claim must also be arbitrated. The minimum

wage claim is NOT "derivative" of the overtime claim.  Rather, it is an alternative to their overtime claim.  The uncompensated time spent on the platform must either be paid at overtime/doubletime rates or, alternatively, at the minimum wage rate.  This is because every hour worked must be paid at a rate of *no less than* the minimum wage rate.  8 Cal. Code Regs., § 11160, subd. 4(B).  So, while there may be a failure to pay overtime for hours worked in excess of eight in a day or forty in a week, there would also be a failure to pay minimum wage for those same hours worked.

### 5.    California Law Precludes PAGA Claims From Being Arbitrated.

Plaintiffs' cause of action for PAGA is not subject to the CBAs individual grievance and arbitration procedure and Plaintiff are entitled to proceed with their representative PAGA claim in court.  *See Iskanian v. CLS Transportation Los Angeles*, 59 Cal.4th 348, 383-84 (2014), *cert. denied*, 135 S.Ct. 1155 (2015).  Regardless of how this Court rules on the arbitrability of the other claims, Plaintiffs' PAGA claims cannot be ordered to arbitration.  *Id.*

### 6.    Plaintiffs' Failure To Follow The Grievance Procedures Does Not Mandate Dismissal Of Their Claims.

Defendant argues that Plaintiffs are barred from asserting claims that they did not address under the terms of the grievance procedures articulated in the CBAs.  Whether or not Plaintiffs were required to exhaust the CBA grievance process prior to filing their lawsuit is a defensive claim to Plaintiffs' lawsuit.  And such a defensive claim cannot form the basis for LMRA preemption. *Meyer v. Irwin Industries, Inc.*, 723 F.Supp.2d 1237, 1246 (2010).  Moreover, the grievance procedure only applies to claims to enforce the CBA, not statutory guarantees that arise separately and independently of the CBA.  As discussed above, the waiver of the right to sue in court must be clear and unmistakable.  *14 Penn Plaza LLC*, 556 U.S. at 257.

The U.S. Supreme Court has consistently held that the preemptive reach of Section 301 does not extend to "nonnegotiable rights conferred on individual employees as a matter of state law…." *E.g., Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *Allis-*

*Chalmers Corp. v. Lueck*, 472 U.S. 202, 212 (1985) ("it would be inconsistent with congressional intent under that section [301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

The U.S. Supreme Court, the Ninth Circuit and California courts have all uniformly held that claims for the violation of California's statutory minimum labor standards – such as the claims alleged herein – are not preempted under Section 301 of the LMRA. *See Livadas*, 512 U.S. at 125; *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (2000) (requiring that discharged employees in the motion picture industry be paid within a specified period of time); *Lujan v. So. Cal. Gas Co.*, 96 Cal.App.4th 1200 (2002) (the court found no preemption of overtime claims, despite the fact that the CBA purported to establish and govern the overtime plan).

It is also significant that all of these Labor Code provisions are non-negotiable. Lab. Code § 219 ("no provision of this article can in any way be contravened, or set aside by private agreement, whether written, oral, or implied."); *see also Mechanical Contractors Assn. v. Greater Bay Area Assn.*, 66 Cal.App.4th 672, 688 (1998) ("Contracts that are contrary to express statutes or the policy of express statutes . . . are illegal contracts.")

In this same vein of reasoning, the grievance procedures of the CBAs run contrary to well-settled statutory guarantees (and public policy) relating to the statute of limitations for wage and hour actions. Here, the CBAs limit the statute of limitations for Plaintiffs' claims to 30 days [CBA1, Art. XIII, Section 13.4(a)(1); CBA2, Art. XIV, Section 14.4(a)(1)]. But this contradicts California law, which otherwise provides for a three-year statute of limitations in most wage claims, and four years for claims under Business and Professions Code Section 17200. Civ. Code § 338; Bus. & Prof. Code § 17208. Moreover, it is unconscionable, as addressed by the Northern District in *Zaborowski v. MHN Government Service, Inc*., 936 F.Supp.2d 1145 (N.D. Cal. 2013), which held that a 180-day statute of limitations for an FLSA claim was substantively unconscionable. *Id*. at 1153, citing *Armendariz v. Found. Health,* 24 Cal.4th 83 (2000).

This Court should, therefore, find a 30 day statute of limitations equally, if not more, unconscionable. *Zaborowski* also found the contract provision to be procedurally unconscionable as a contract of adhesion. The same applies here.

### 7. Plaintiffs' Overtime and Meal Break Claims Are Not Precluded by Labor Code 514.

Defendants mislead this Court by suggesting that Labor Code Section 514 bars Plaintiffs' overtime and meal break claims. This is simply not true. Section 514 merely stands for the proposition that employers and employees can enter into collective bargaining agreements which set the terms for compensable overtime and meal breaks, which may differ from the overtime and meal break requirements otherwise articulated under California law (here, Labor Code Section 510 and Wage Order 16). Defendant's application of this principle to this case is in dispute.

Defendant cites the holding in *Vranish v. ExxonMobil Corp*., 223 Cal.App.4th 103 (2014), to bolster what appears to be its argument that Labor Code Section 514 and Wage Order 16 immunizes it from overtime liability and meal break liability. It does not. *Vranish* merely affirms the principle that employers and employees are free to contract regarding how overtime and meal breaks are to be compensated. But to the extent the CBAs here provide for payment of overtime, they must pay said overtime. Plaintiffs lawsuit is premised on Defendants failure to abide by its own CBA and California law because they are essentially one and the same. Here, the plain language of the CBAs provide for overtime to be paid in conformity with the Labor Code Section 510 [See Sections entitled "Excess Hours" in CBA1, Art. XIV, Section 14.5 and CBA2, Art. XV, Section 15.5.] The CBAs also expressly provide that "when employees work overtime hours *as defined by the State of California*, a premium on all such hours will be paid by the Company." [See Section entitled "Special Shifts" in CBA1, Art. XIV, Section 14.8 and CBA2, Art. XV, Section 15.8 (emphasis added).] Finally, the CBAs expressly provide that "[e]mployees are entitled to paid breaks *in accordance with*

1    *California law* and Company policy." [See Section entitled "Show-Up Time" in CBA1,

2    Art. XIV, Section 14.13 and CBA2, Art. XV, Section 15.13 (emphasis added).]

3    Plaintiffs' amended complaint alleges that Defendant failed to abide by its own CBA by

4    failing to pay overtime for all hours worked as defined by the Supreme Court of

5    California in *Mendiola* and failed to provide meal and rest breaks as mandated by its

6    own CBA and California law.  Labor Code Section 514 does not spare Defendants from

7    either obligation.  Moreover, not all of the elements under Labor Code  Section 514's

8    are met here with respect to employees governed by CBA2 because not all of the

9    employees listed in "Schedule B" earn at least 30% over the minimum wage. Eight

10   categories of employees make less than 30% of the minimum wage.

   **B.  California Law Applies To The Outer Continental Shelf.**

   **1.     The FLSA Is Not A "Comprehensive" Body Of Wage-And-Hour Law.**

14        The OCSLA does not bar any of Plaintiffs' claims, because the FLSA is

15   intentionally not a comprehensive body of labor law and expressly allows states to fill

16   in its gaps.  Section 1333(a)(2) of the OCSLA provides, in relevant part: "To the extent

17   that they are applicable and not inconsistent with this subchapter or with other Federal

18   laws and regulations of the Secretary now in effect or hereafter adopted, the civil and

19   criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or

20   repealed are declared to be the law of the United States for that portion of the subsoil

21   and seabed of the outer Continental Shelf." 43 U.S.C. § 1333(a)(2).

22        According to the Supreme Court, Section 1333(a) of the OCSLA provides that,

23   "[t]o the extent that a *comprehensive body of federal [statutory] law* is applicable under

24   § 1333(a)(1), state law 'inconsistent' with that law would be inapplicable under §

25   1333(a)(2)." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 101 (1971) (emphasis added).

26        Defendant's argument is based on a faulty premise, i.e., that the FLSA "is a

27   comprehensive federal statute providing for the payment of minimum wages and

28   overtime for hours worked, leaving no gap for Plaintiffs' state law causes of action to

-8-

1  fill." [Motion to Dismiss, 21:8-10.] Courts acknowledge that there is no comprehensive,

2  uniform wage-and-hour scheme established by federal legislation. *Chavez v. IBP, Inc.*,

3  2005 WL 6304840, at *36-37 (E.D. Wash. May 16, 2005), citing *Allis–Chalmers Corp.*

4  *v. Lueck*, 471 U.S. 202, 208 (1985).  Fields such as maritime commerce, interstate

5  transportation, and telecommunications are traditional fields that are exclusively

6  regulated by the federal government. *United States v. Locke*, 529 U.S. 89, 113-117

7  (2000); *Ting v. AT & T*, 319 F.3d 1126, 1136 (9th Cir. 2003); *CSX Transp., Inc., v.*

8  *Easterwood*, 507 U.S. 658, 663 (1993).  Not so with federal laws governing labor

9  standards; instead, "wage and hour standards are different" from these traditional fields

10 of exclusive federal regulation. *Chavez*, 2005 WL 6304840, at *35.

### 2.    The FLSA Allows Concurrent State Regulation Of Labor Standards.

12         Instead of an exclusive federal field of regulation over wage-and-hour standards,

13 there is a long history of concurrent federal and state regulation of employee rights. *See*

14 *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S.

15 274, 289 (1971); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987)

16 (recognizing state's traditional police powers to establish labor standards so long as

17 they are not inconsistent with federal standards).  In this milieu of concurrent state and

18 federal regulation of wage-and-hour laws throughout the country, "[c]oncurrent

19 regulation does not equate necessarily to conflicting regulation." *Chavez*, 2005 WL

20 6304840, at *35.

21         Indeed, Congress specifically included a Savings Clause in the FLSA to allow for

22 greater protection of employees under state law.  The Savings Clause provides in

23 relevant part:  "No provision of this chapter or of any order thereunder shall excuse

24 noncompliance with any federal or State law or municipal ordinance establishing a

25 minimum wage higher than the minimum wage established under this chapter or a

26 maximum workweek lower than the maximum workweek established under this

27 chapter...."  29 U.S.C. § 218(a); *Aubry*, 918 F.2d at 1420.  The Savings Clause's plain

28 language "evinces a clear intent to preserve rather than supplant state law." *Knepper v.*

*Rite Aid Corp.*, 675 F.3d 249, 262 (3d Cir. 2012).  Moreover, "the presence of the savings clause undermines any suggestion that Congress intended to occupy the field of wage and hour regulation." *Id.*

In *Aubry*, the Ninth Circuit held: "There is no indication that Congress, in enacting the FLSA's savings clause, intended to preempt states from according more generous protection to maritime employees on the high seas off a state's coastal waters. Further, the purpose behind the FLSA is to establish a national *floor* under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA." *Id.* (italics in original).

The *Aubry* case concerned the enforcement of California's overtime pay laws against an employer operating vessels off the California coast.  *Id.* at 1411. The *Aubry* court held that California's overtime pay laws – which provided greater protection than the FLSA's overtime pay laws vis-à-vis the seamen and maritime employees in question – were not preempted by the FSLA. *Id.* at 1422.   The court noted that "*California's more protective overtime provisions are compatible with, rather than conflict with, the [FLSA]*." *Id.* at 1424 (emphasis added).  The *Aubry* court reasoned, "California's attempt to supplement federal law in this case does not present an irreconcilable conflict with the statutory maritime law or with the FLSA; it does not contravene the essential purpose expressed by an act of Congress."  *Id.* at 1422-1423 (internal quotations omitted).

### 3. The OCSLA Adopts State Law To Fill In The Gaps In Federal Statutes.

Because the FLSA is not a comprehensive federal scheme governing wage-and-hour law, the OCSLA supplements its "gaps" with state law:  "Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.'"

*Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969).

The OCSLA adopts state law to fill in the gaps left by federal statutes or regulations promulgated by the Secretary of the Interior – not by federal common law or nonbinding federal regulations.  Congress's intent in this regard is evident in the plain language of the OCSLA.  The reference in Section 1333(a)(2) to "this subchapter" is Subchapter III "Outer Continental Shelf Lands" of Chapter 29 "Submerged Lands" of Title 43 "Public Lands of the United States Code."  In other words, "this subchapter" is the OCSLA.  The OCSLA's reference "regulations of the Secretary" means regulations promulgated by the Secretary of the Interior.  43 U.S.C. § 1331(b) (defining the term "Secretary" as used in the OSCLA as the Secretary of the Interior or, in certain situations, the Secretary of Energy or the Federal Energy Regulatory Commission).  Thus, under the OCSLA's plain terms, state law fills in the gaps left by federal *statutes*, such as the FLSA, or regulations promulgated by the Secretary of the Interior.

### 4.  The OCSLA Does Not Permit The Filling In Of Gaps In Federal Statutes With Federal Common Law.

It would be error for this or any other Court to fill in such gaps with federal common law or nonbinding regulations.  The Supreme Court addressed this issue in *Chevron Oil*.  There, the issue presented was whether a state statute or federal common law determined the statute of limitations on a personal injury action arising on an island drilling rig subject to the OCSLA.  *Chevron Oil*, 404 U.S. at 98.  The rig was off the coast of Louisiana, and the plaintiff, who waited over two years to file suit, argued that the admiralty doctrine of laches, rather than Louisiana's one-year limitation on personal injury actions, governed the case.  *Id.* at 98-99.  The Supreme Court held that the OCSLA "requires that the state statute of limitations be applied to personal injury actions" arising on oil platforms on the outer continental shelf.  *Id.* at 100.

The Supreme Court in *Chevron Oil* specifically addressed the issue of whether the Louisiana time limitation was "inconsistent" with the admiralty doctrine of laches.  *Id.* at 101-105.  The Court held that, even in a situation where a state law is inconsistent

with federal common law, it would "subvert[] the congressional intent" of the OCSLA to apply the federal common law and not the state law to a claim arising on an oil platform, despite any inconsistency. *Id.* at 103-104. According to the Supreme Court:

> "[U]nder the OCSLA, there is not even such limited freedom to create a federal statute of limitations, for Congress specified that a comprehensive body of state law should be adopted by the federal courts in the absence of existing federal law. Congress specifically rejected national uniformity and specifically provided for the application of state remedies which demand state, not federal, statutes of limitation. Thus, Congress made clear provision for filling in the 'gaps' in federal law; it did not intend that federal courts fill in those 'gaps' themselves by creating new federal common law."

*Id.* at 104-105. In other words, with respect to actions arising under the OCSLA, federal courts cannot fill in the gaps left by federal statutes with federal common law.

### 5.    Defendant's Authority Is Misplaced.

*Continental Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n*, 417 F.2d 1030 (5th Cir. 1969) is distinguishable. There, the incident giving rise to the lawsuit – a collision between an ocean-going vessel and an offshore drilling platform – "was clearly a maritime claim under the Extension of Admiralty Jurisdiction Act." *Continental Oil*, 417 F.2d at 1032. The platform owner sued the shipowner's underwriter under a Louisiana statute that allowed direct actions against insurers. *Id.* at 1033. The Federal Extension of Admiralty Jurisdiction Act did not allow such direct actions. *Id.* at 1033, fn. 9. The *Continental Oil* court did not even reach the issue of whether these two statutory schemes were "inconsistent," since it held that the Louisiana statute did not apply to the action in the first place. *Id.* at 1040.

*Nations v. Morris*, 483 F.2d 577 (5th Cir. 1973) is also distinguishable. In *Nations*, a worker injured on an oil platform attempted to bring an action against the

1  employee who injured him and his employer's insurer under the same Louisiana Direct

2  Action Statute. *Nations*, 483 F.2d at 579-580.  The Fifth Circuit held that the worker's

3  claim was barred because the injured employee's claims arose under the Longshore and

4  Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA").   The

5  *Nations* court found that, in contrast with Louisiana law, the LHWCA specifically

6  barred actions against co-workers and insurers.  *Id.* at 586-587.

7      The *Nations* decision is distinguishable for a number of reasons.  First, the court

8  affirmed that the LHWCA specifically states that it is an injured worker's exclusive

9  remedy.    *Id.*; 33 U.S.C. § 993(i).   "Since the [LHWCA] destroys the right to relief

10  outside the statutory coverage, it would follow that a claimant could not proceed against

11  the insurer on a non-existent right to relief."  *Id.* at 587 (internal quotations omitted).

12  Unlike the FLSA, which Congress intended to be a *floor* of national standards for

13  minimum wage and overtime compensation, the LHWCA was comprehensive, had "no

14  gap – not even a tiny one," and was "complete and self-sufficient."  *Id.* at 589.   The

15  LHWCA, unlike the FLSA, does not have a savings clause and is explicitly the

16  exclusive remedy for a worker injured on an offshore oil platform.

17      The *Couvillion v. Nicklos Oil & Gas Co.*, 671 F. Supp. 446 (E.D. La. 1987)

18  decision is distinguishable for the same reason, since it involved nearly identical facts

19  and issues as *Nations* and came to the same conclusion.  *Id.* at 448-449.

20      The *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506 (5th Cir. 1985) decision also

21  involved the LHWCA and is distinguishable for nearly the same reason.  In *LeSassier*

22  the plaintiff was terminated after filing a claim for benefits under the LHWCA for an

23  injury sustained on an offshore oil platform.  *Id.* at 507.  He brought suit for wrongful

24  discharge under a Louisiana statute that prohibited discharge because of an employee's

25  assertion of claims under Louisiana law, other states' laws, or laws of the United States.

26  *Id.* at 507.  The Fifth Circuit held that the state law claim was barred under the OCSLA

27  because the LHWCA has a specific provision allowing an employee to bring a civil

28  action against his employer for wrongful discharge for filing a claim for benefits.  *Id.* at

509-510.  Again, unlike the FLSA, the LHWCA was the injured employee's exclusive remedy and there was no gap that warranted the application of Louisiana law as surrogate federal law.  *Id.*

The *Oppen v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973) decision did not apply the OCSLA.  *Id.* at 254.  The action did not arise on any oil platform or other situs where the OCSLA would have operation.  *Oppen* is distinguishable and wholly inapplicable on these facts.

### 6.     The Federal Enclave Cases Are Inapplicable.

*Mersnick v. USProtect Corp.*, 2006 WL 3734396 (N.D. Cal. Dec. 18, 2006) is inapplicable on its facts as well.  *Mersnick* involved a wage-and-hour dispute between a full-time security officer and his employer, stemming from work performed under a federal contract at Vandenberg Air Force Base, a federal enclave.  *Id.* at *1.  The Northern District of California held that various California state law claims were barred by the Federal Enclave Doctrine.

*Mersnick* is not an OCSLA case.   Instead, it is a Federal Enclave case.  A federal enclave is land over which the federal government exercises legislative jurisdiction. *Kelly v. Lockheed Martin Services Group*, 25 F. Supp. 2d 1, 3 (D. Puerto Rico 1998).  A federal enclave is created when the federal government purchases land within a state with the state's consent, which may be conditioned on the retention of state jurisdiction consistent with the federal use.  *Paul v. United States*, 371 U.S. 245, 264-265 (1963). Workers on federal enclaves would be entitled to assert any claims "authorized by federal law, by any California law not in conflict with federal law ***that existed when the workplace became a federal enclave***..., and by subsequently enacted state law to the extent authorized by Congress."  *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 482 (2000) (emphasis added).  A defendant seeking the protection of the Federal Enclave Doctrine must present evidence as to when and how the United States Government accepted jurisdiction over the property at issue, and that the employee actually worked inside the asserted enclave.  *Id.* at 479-480.  Here, Defendant has not

-14-

1    met this burden.

2         What is more, unlike on the Air Force Base in *Mersnick*, in the OCSLA Congress

3    specifically authorized the application of state law in certain circumstances that the

4    *Mersnick* case did not address.  For example, nowhere in the Federal Enclave Doctrine

5    is there a provision for state law filling in the gaps in federal statutes or regulations of

6    the Secretary of the Interior.   Unlike on a federal enclave, state laws do not become

7    federal laws, as they do under the OCSLA.  Also unlike *Mersnick*, state and federal

8    courts have held that the IWC Wage Orders apply in the Santa Barbara Channel, which

9    is in federal waters, and do not conflict with state law.  *Aubry*, 918 F.2d at 1426;

10   *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 566, 568, 578-579

11   (1996) ("no provision of the FLSA 'actually conflicts' with California law").

12        Moreover, *Mersnick* is distinguishable for the simple reason that nowhere in it

13   does that court address the FLSA savings clause, rendering it wholly unpersuasive in

14   this case.  The same is true of *George v. UXB Int'l, Inc.*, 1996 WL 241624 (N.D. Cal.

15   1996), which Defendant cites.  It is even more devoid of reasoning than *Mersnick* and is

16   of limited, if any, value here.

17        Finally, not only do *Mersnick* and *George* invoke the federal enclave doctrine,

18   but they do so in the context of a wage dispute arising from labor performed ***under***

19   ***federal contracts*** on land that was undisputedly a federal enclave.   Here, the oil

20   platforms are not federal enclaves.  And, the wage and hour violations did not arise

21   from work performed under a federal contract.

22        Hence, the primary question here is whether, under the OCSLA, the California

23   state laws that underlie Plaintiffs' claims are inconsistent with a federal statute – in this

24   case, the FLSA – *not* with regulations or case law decisions that interpret that statute.

25        **7.    None Of Plaintiffs' Claims Are Inconsistent With The FLSA.**

26             **i.  Plaintiffs' First Cause Of Action For Minimum Wage Violations Is
                 Not Inconsistent With The FLSA.**

27   

28   Plaintiffs' cause of action for minimum wage violations arises under Labor Code

1  sections 1194 and 1197.   [First Amended Complaint) at ¶ 14.]   Plaintiffs alleges:

2  "Plaintiffs and the Putative Class regularly worked hours for which they were not paid

3  the minimum wage.   Defendants' minimum wage violations include, but are not limited

4  to, the failure to pay any wages whatsoever to Plaintiffs and the Putative Class for 12

5  hours each workday."   [*Id.* at ¶ 15.]

6       In addition, Plaintiffs' minimum wage claim arises under section 4 of Wage

7  Order 16-2001.  8 Cal. Code Regs. § 11160(4).  The Wage Order is implicated because

8  it governs wage claims and specifically directs employers to compensate employees at

9  the minimum wage for all hours worked.  "[California] wage and hour claims are today

10  governed by two complementary and occasionally overlapping sources of authority: the

11  provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage

12  orders, adopted by the IWC."  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th

13  1004, 1026 (2012).  The IWC, a state agency, was empowered to issue wage orders,

14  which are legislative regulations specifying minimum requirements with respect to

15  wages, hours, and working conditions.  *Id.* at 1026-1027.  Wage Order 16-2001 applies

16  to "Certain On-Site Occupations In The Construction, Drilling, Logging and Mining

17  Industries," including "all job classifications associated with the exploration or

18  extraction of oil."  8 Cal. Code Regs. § 11160(2)(E).

19       Wage Order 16-2001 states, in relevant part: "Every employer shall pay to each

20  employee wages not less than nine dollars ($9.00) per hour for all hours worked."  *Id.* at

21  (4)(A).  It defines "hours worked" as "the time during which an employee is subject to

22  the control of an employer, and includes all the time the employee is suffered or

23  permitted to work, whether or not required to do so."  *Id.* at (2)(J).

24       Hence, under California's comprehensive body of state law (which is made up of

25  the Labor Code and the implementing Wage Orders), a claim for unpaid minimum

26  wages arises when an employer fails to pay the minimum wage for each hour worked.

27       In comparison, the FLSA establishes a dollar amount for the minimum wage, but

28  does not explicitly state when employers need not pay the minimum wage or what

-16-

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   constitutes hours worked.  *See* 29 U.S.C. § 206(a) (setting minimum wage at $7.25 per

2   hour); 29 U.S.C. § 203(o) (defining what does *not* constitute "hours worked").

3        There are two primary differences between the state and federal minimum wage

4   laws.  First, the FLSA requires employers to pay a lower minimum wage.  Yet, while

5   California affords slightly higher protection to its employees – in the form of a higher

6   minimum wage – that fact does not make it "inconsistent" with the FLSA.  The FLSA's

7   savings clause expressly allows states to provide greater protection to employees; the

8   $7.25 rate is merely a "a national *floor* under which wage protections cannot drop."

9   *Aubry*, 918 F.2d at 1425.

10       Section 203(o) of the FLSA only mentions some activities that are excluded from

11  "hours worked" for the purposes of FLSA minimum wage and overtime claims, but

12  does not define it.  Therefore, its definition of "hours worked" is limited: "§ 203 does

13  not adopt a broad custom or practice standard regarding the determination of hours

14  worked.  Rather, § 203 operates as a rule of exclusion."  *Local 1605 Amalgamated

15  Transit Union, AFL-CIO v. Cent. Contra Costa Cnty. Transit Auth.*, 73 F. Supp. 2d

16  1117, 1121 (N.D. Cal. 1999); *Chavez*, 2005 WL 6304840, at *36 (section 203(o) does

17  "not establish a uniform, nationwide policy of determining 'hours worked' or liability

18  for pay).  As a result, unlike corresponding California law, "[t]he FLSA does not define

19  'hours worked.'"  *Mesfun v. Hagos*, No. CV 03-02182 MMM (RNBX), 2005 WL

20  5956612, at *15 (C.D. Cal. Feb. 16, 2005).

21       The FLSA, therefore, leaves a crucial gap in its statutory scheme as to which

22  hours may be counted or excluded for the purpose of determining when to pay the

23  federal minimum wage.

24       Defendant argues that the FLSA "comprehensive implementing regulations" fill

25  in the gaps left by the FLSA; however, the test under the explicit terms of the OCSLA

26  is not whether federal regulations fill the void, but rather whether the federal statute

27  itself has significant gaps.  Moreover, the regulations Defendant cites – 29 C.F.R. §§

28  785.22, 785.23, and 785.19 – do not have the force of law.  *Skidmore v. Swift & Co.*,

1   323 U.S. 134, 139 (1944) (these regulations "are not, of course, conclusive, even in the

2   cases with which they directly deal, much less in those to which they apply only by

3   analogy. They do not constitute an interpretation of the [FLSA] or a standard for

4   judging factual situations which binds a district court's processes, as an authoritative

5   pronouncement of a higher court might do."); *Bright v. Houston Nw. Med. Ctr.*

6   *Survivor, Inc.*, 934 F.2d 671, 676 (5th Cir. 1991); *Bouchard v. Regional Governing Bd.*

7   *Of Region V Mental Retardation Services*, 939 F.2d 1323, 1327 (8th Cir. 1991).

8        The IWC Wage Orders, by contrast, are "legislative regulations," and the

9   California legislature specifically empowered the IWC to issue them. *Mendiola v. CPS*

10  *Security Solutions, Inc.*, 60 Cal. 4th 833, 838 (2015); Cal. Lab. Code §§ 1173, 1182.11.

11  Thus, the regulations cited by Defendant do not have the same force of law as the Wage

12  Orders, and these non-legislative, non-binding federal regulations, which can only

13  become federal law through common law decisions, cannot fill in the gaps in the FLSA

14  in this situation. *Chevron Oil*, 404 U.S. at 104.  Only state law can fill in these gaps,

15  even if state law is inconsistent with any federal common law. *Id.* at 103-104.

16       Defendant claims that the California Supreme Court's decision in *Mendiola*, 60

17  Cal.4th 833, is inconsistent with federal law, but in truth it is "not inconsistent" with

18  any federal statutes.  *Mendiola* involved a claim by security guards who sought

19  "compensation for all on-call hours spent at their assigned worksites under their

20  employer's control."  *Id.* at 836.  The security guards spent part of each day on active

21  patrol, and the employer required them "to be on call at the worksite and to respond to

22  disturbances should the need arise." *Id.* at 837.  The *Mendiola* court addressed two

23  issues.  First, the Court analyzed whether the security guards' on-call hours constitute

24  compensable hours worked.  Second, the Court looked at whether the employer could

25  exclude "sleep time" from the guards' 24-hour shifts. *Id.* at 838.

26       As for the first issue, *Mendiola* concluded that, under the facts presented, the

27  guards were entitled to be paid for their "on-call" time.  *Id.* at 841.  In reaching this

28  conclusion, the California Supreme Court looked to federal common law.  That is, the

-18-

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1    Court cited *Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir. 1992) in stating seven

2    factors that bear on whether on-call time must be compensated under the FLSA.

3    *Mendiola*, 60 Cal.4th at 841, quoting *Owens*, 971 F.2d at 351, fns. omitted.   *Owens*

4    primarily dealt with the issue of "whether the FLSA requires overtime compensation for

5    the hours Plaintiffs were required to be available by telephone for 'on-call' activities."

6    *Owens*, 971 F.2d at 348.   In *Owens*, the Ninth Circuit recognized that each case seeking

7    compensation for "on-call" time "must stand on its own facts."   *Id.* at 351, quoting

8    *Skidmore*, 323 U.S. at 140.   Applying the *Owens* factors to the facts presented in

9    *Mendiola*, the Court concluded that the time the workers spent "on-call" was "hours

10   worked" under Wage Order 4.   Given that *Mendiola* applied federal common law

11   principles to reach the conclusion that the guards needed to be compensated for their

12   "on-call" hours, *Mendiola*'s first holding is not inconsistent with the FLSA.

13          *Mendiola*'s second holding also is not inconsistent with the FLSA.   *Mendiola*

14   held that Wage Order 4's definition of "hours worked" did not incorporate certain

15   federal regulations that, in part, *might under certain facts* allow the exclusion of sleep

16   time from the hours worked of an employee who is required to be on duty for 24 hours

17   or more.[1]   *Id.* at 848-849; 22 C.F.R. § 785.22(a); 8 Cal. Code Regs. § 11040(2)(K).   The

18   defendant in *Mendiola* argued that, even though the Wage Order definition of "hours

19   worked" did not on its face incorporate the federal regulations in question, such an

20   incorporation should be implied.   *Mendiola*, 60 Cal. 4th at 842.   The Court rejected this

21   argument because there was no evidence that the IWC intended to incorporate the

22   federal regulations into the Wage Order's definition of "hours worked."   *Id.* at 848.

23          The "sleep time" regulation the Court found to not be incorporated into Wage

24   Order 4 was 22 C.F.R. § 785.22.   Section 785.22, a regulation promulgated by the

25   Department of Labor, does not have the power of law.   Indeed, section 785.22

---

[1] The *Mendiola* decision vis-à-vis Wage Order 4 applies with equal force to Wage Order 16-2001, because they define "hours worked" in the same way.   8 Cal. Code Regs. § 11160(2)(J); 8 Cal. Code Regs. § 11040(2)(K).

acknowledges that whether sleeping time is compensable is a question of fact and that there are situations in which sleeping time is compensable. *See* 29 C.F.R. § 785.22(a) and (b).

In this respect, section 785.22 is consistent with federal common law. For example, in *General Elec. Co. v. Porter*, 208 F.2d 805 (1953), the Ninth Circuit overturned a lower court decision excluding sleeping time as working time in a situation involving firemen who slept a portion of the time they were on duty at a fire station. *Id.* at 814. The *Porter* court stated the rule that "the ultimate determination of whether or not sleeping time is work time presents a mixed question of law and fact" and noted that "sleeping time may be work time under appropriate circumstances." *Id.*

Section 785.22 cites a number of cases – including *Porter* – that stand for the same proposition, i.e., that whether sleeping time is compensable under the FLSA depends on the particular facts of each case. 29 C.F.R. § 785.22(a). The *Mendiola* court cited two of those cases – *Armour v. Wantock*, 323 U.S. 126 (1944) and *Skidmore*, 323 U.S. 134 – in its statement of the generally applicable law governing whether on-call time may require compensation. So, while *Mendiola* did not find that Wage Order 4 incorporated section 785.22 into its definition of "hours worked," the Court did perform a similar factual analysis of the security guards' situation to conclude that their sleeping time was compensable. *Mendiola*'s holding in this regard is not inconsistent with federal common law on the compensability of sleeping time under the FLSA.

Defendant additionally cites to some cases – *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir. 1986), *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1133 (5th Cir. 1984), and *Brigham v. Eugene Water & Electric Board*, 357 F.3d 931, 933 (9th Cir. 2004) – where courts have found that sleeping time is excludable from hours worked under the FLSA. Again, these cases rise and fall on their own facts, as dictated by federal common law, which each court applied. Nevertheless, under the OCSLA, federal common law may not be used to fill in the gaps in federal statutes, so these decisions are of no value in this case. *Chevron Oil*, 404 U.S. at 104.

1    Moreover, in *Brigham*, the Ninth Circuit explained that its analysis of whether

2    on-call time was compensable overtime was dependent on two factors: "(1) the degree

3    to which the employee is free to engage in personal activities; and (2) the agreements

4    between the parties.'" *Id.* citing *Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th

5    Cir. 1994).  The second prong clearly favor a finding that all on-call waiting time hours

6    in this case are compensable because the plain terms of the CBAs provide that "when

7    employees work overtime hours as defined by the State of California, a premium on all

8    such hours will be paid by the Company." [CBA1, Art. XIV, Section 14.8; CBA, Art.

9    XV, Section 15.8]. This is confirmed by *Gen. Elec. Co. v. Porter*, 208 F.2d 805, 814

10   (9th Cir. 1953) (an employer and his employees may by agreement settle the question

11   whether certain activity or non-activity constitutes work within the meaning of the

12   [FLSA]).  California has defined what compensable overtime hours are in *Mendiola*.

13   While Plaintiffs cites the *Mendiola* decision in his complaint, his claim does not

14   necessarily rise or fall on whether *Mendiola* applies.  Under the facts presented by

15   Plaintiffs in his complaint, and as will be adduced in discovery and at trial, Plaintiffs

16   and the class members must be compensated for every hour that they are on the

17   platforms.

18   Even if the Court finds that *Mendiola* is inconsistent with the definition of "hours

19   worked" as set forth in 29 C.F.R. § 785.22, that does not mean that it is inconsistent

20   with the FLSA as applied under the OCSLA.  Under the OCSLA, when a gap exists in a

21   federal statute (such as whether all time spent by Plaintiffs and the putative class on oil

22   platforms is compensable), state law (like *Mendiola* and the IWC Wage Orders) fills in

23   the gap, even in the face of federal common law on point.  Hence, section 785.22,

24   which is not law, cannot fill in the FLSA's gap.  Consequently, the OCSLA does not

25   preclude this claim.

26   Even if the Court were to find that *Mendiola* is facially inconsistent with the

27   FLSA, the FLSA's savings clause effectively erases such an inconsistency and would

28   allow Plaintiffs' California law claim for unpaid minimum wage to proceed.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Finally, if the Court were to find that *Mendiola* is facially inconsistent with the FLSA, the parties clearly agreed to apply California law under the CBAs.

### ii. Plaintiffs' Second Cause Of Action For Pay Stub Violations Is Not Inconsistent With The FLSA.

Plaintiffs' claim under section 226 is not inconsistent with the FLSA or any other federal statute or regulation of the Department of the Interior.  The FLSA does require that employers keep accurate records of hours worked and wages paid to employees.  29 U.S.C. § 211(c).   However, the FLSA does not require an employer to provide employees pay stubs.   Similarly, the FLSA does not prohibit states from requiring employers to provide pay stubs.   Given the lack of any federal statutes requiring employers to provide pay stubs, Defendant cannot satisfy its burden in its motion of establishing that section 226 is inconsistent with any such federal statutes.   Therefore, Defendant's argument that the OCSLA bars this claim must fail.

### iii. Plaintiffs' Third Cause Of Action For Unfair Competition Is Not Inconsistent With The FLSA.

The UCL prohibits acts of unfair competition, which includes any "unlawful, unfair or fraudulent business act or practice…."  Cal. Bus. & Prof. Code § 17200.  Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003); *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 898, 900 (C.D. Cal. 2005).  Violation of almost any federal, State, or local law may serve as the basis for a UCL claim.  *Bahramipour v. Citigroup Global Markets, Inc.*, No. C 04-4440 CW, 2006 WL 449132, at *2 (N.D. Cal. Feb. 22, 2006); *Cortez v. Purolator Air Filtration Products Company*, 23 Cal. 4th 163, 178 (2000) ("An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL.").

Moreover, as an independent cause of action, the UCL claim survives the OCSLA test.  "[T]he FLSA under express or field preemption analysis does not preclude a state law UCL cause of action…. Under a conflict preemption analysis

neither is application of the UCL impossible nor does it stand as an obstacle to the general purpose of the FLSA.  The purpose of the UCL is not contrary to the FLSA's purpose of protecting employees." *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1117 (S.D. Cal. 2006); *Bahramipour*, 2006 WL 449132, at *7 ("The UCL as invoked in Plaintiffs' claim does not stand as an obstacle to the purposes of the FLSA.").  Therefore, there is no basis for the entry of judgment on Plaintiffs' UCL claim.

### iv. Plaintiffs' Fourth Cause Of Action For The Failure To Timely Pay Wages Is Not Inconsistent With The FLSA.

The section 203 claim is not inconsistent with the FLSA because the FLSA does not contain a provision equal to Labor Code sections 201 and 202 governing the timing of payment of final wages.  Consequently, there is a "gap" in the FLSA that the OCSLA fills with state law that is, like section 203, not inconsistent with any federal laws.

### v. Plaintiffs' Fifth Cause Of Action For The Failure To Provide Lawful Meal Periods Is Not Inconsistent With The FLSA.

Plaintiffs' meal period claim is not inconsistent with the FLSA because the FLSA does not contain a provision equal to Labor Code sections 226.7 and 512 governing meal periods and the penalties for not providing them.  In fact, federal regulations implicitly recognize that some states require off-duty meal periods, and the federal regulations address how to treat off-duty meal periods for the purpose of computing hours worked.  *See* 29 C.F.R. § 785.19.  Consequently, these Labor Code provisions are not inconsistent and there is a recognized "gap" in the FLSA that the OCSLA fills with state meal period laws on the oil platforms in question.

### vi. Plaintiffs' Sixth Cause Of Action For The Failure To Pay Overtime And Doubletime Premium Wages Is Not Inconsistent With The FLSA.

Plaintiffs' overtime claim is an alternative to his claim for unpaid minimum wages.  He seeks overtime or doubletime premium wages under Labor Code section 510 for all hours for which Defendant failed to pay him and the Putative Class over and

1   above the 12 hours of daily pay they received during their hitch.

2       For the same reasons as stated herein with respect to Plaintiffs' claims for unpaid

3   minimum wages, their claims for overtime and doubletime premium wages are not

4   inconsistent with federal law.  This is by virtue of the FLSA's Savings Clause explicitly

5   makes such a claim "not inconsistent" with the FLSA, thereby allowing states to add

6   daily overtime and doubletime to the *floor* established by the FLSA's weekly overtime

7   standard.  Federal Department of Labor regulations recognize that "many employment

8   contracts provide for the payment of overtime compensation for hours worked in excess

9   of 8 per day" or on the seventh day in a workweek or doubletime payments and set forth

10  regulatory guidelines for how to deal with such situations, which suggests that the

11  FLSA is consistent with overtime as provided for in California law.  29 C.F.R. §§

12  778.202, 778.203, 778.206, 778.308.  Also, the fact that California's definition of hours

13  worked would fill in any gaps left by the federal definition of that term allows the

14  OCSLA to adopt the law that forms the basis for Plaintiffs' overtime claim from the

15  adjacent state.  Plus, as discussed below, the parties expressly agreed that California law

16  would apply to their disputes.

17          **vii.   Plaintiffs' Seventh Cause Of Action For PAGA Is Not
18                   Inconsistent With The FLSA.**

19      In addition to establishing new civil penalties for Labor Code violations that did

20  not previously carry a penalty, Cal. Lab. Code § 2699(f), PAGA allows aggrieved

21  employees to recover Labor Code penalties directly from their employers. Cal. Lab.

22  Code § 2699(g).  If an employee successfully recovers an award of civil penalties,

23  PAGA requires that 75 percent of the recovery be paid to the Labor and Workforce

24  Development Agency, with the remaining 25 percent going to the employee.  Cal. Lab.

25  Code § 2699(i).  In this respect, "[a] PAGA representative action is therefore a type of

26  qui tam action." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 382 (2014)

27  cert. denied, 135 S. Ct. 1155 (2015).

28      The PAGA claim is not inconsistent with the FLSA because the FLSA does not

-24-

contain a provision equal to Labor Code section 2699 whereby an employee is deputized to bring a law enforcement action against her employer to recover civil penalties.  Section 216 of the FLSA permits the Secretary of Labor to recover certain civil penalties, but it is not as comprehensive as PAGA.  29 U.S.C. § 216.  It also does not expressly prohibit a qui tam-like action for the recovery of civil penalties.  For these reasons, the PAGA claim is not inconsistent with the FLSA and applies under the OCSLA.

### 8.  The CBAs Contemplate The Application Of California Law.

Defendant cannot have it both ways.  It cannot create contractual expectations for its employees that their labor rights will be adjudicated under California law, and then deprive them of this right when sued.  These incompatible positions are precluded under the doctrine of judicial estoppel.  *See, e.g., Samson v. NAMA Holdings, LLC,* 637 F.3d 915, 935 (9th Cir. 2010).

Contractual provisions, like those here, where the employer agrees to apply California overtime and meal period laws, are enforceable.  After all, an employer and his employees may by agreement settle the question whether certain activity or nonactivity constitutes work within the meaning of the FLSA. *Bowers v. Remington Rand, Inc.*, 159 F.2d 114 (7 Cir. 1946); *see Tennessee Coal, Iron & Railroad Co., v. Muscoda Local No. 123*, 321 U.S. 590 (1944). Where the arrangement is mutually satisfactory to employer and employee the contract does not violate the Act. *Gen. Elec. Co. v. Porter,* 208 F.2d 805, 814 (9th Cir. 1953).

## IV.    CONCLUSION

Plaintiffs respectfully request the Court to deny Defendant's motion entirely.  To the extent the Court grants Defendant's motion, Plaintiffs request that they be granted without prejudice to allow Plaintiffs to correct any deficiencies.  Moreover, Plaintiffs must be allowed to conduct discovery to support their opposition to this motion.

//

//

Dated:  July 6, 2015                      **STRAUSS & PALAY, APC**


By:  _____/s/_____
    Michael A. Strauss, Esq.
    Andrew C. Ellison, Esq.
    *Attorneys for Plaintiffs and the Putative Class*


Dated:  July 6, 2015                      **STRAUSS LAW GROUP, APC**


By:  _____/s/_____
    Anthony R. Strauss, Esq.
    Aris E. Karakalos, Esq.
    *Attorneys for Plaintiffs and the Putative Class*

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**