Case 2:15-cv-02480-ODW-E   Document 27   Filed 09/22/15   Page 1 of 9   Page ID #:463

Case 2:15-cv-02480-ODW-E   Document 27   Filed 09/22/15   Page 1 of 9   Page ID #:463

Michael A. Strauss, SBN 246718
Andrew C. Ellison, SBN 283884
**STRAUSS & PALAY, APC**
121 North Fir Street, Suite F
Ventura, CA 93001
Telephone: (805) 641-6600
Facsimile: (805) 641-6607
E-mail: mike@palaylaw.com

Anthony R. Strauss, SBN 72842
ars@strausslawgroup.com
Aris E. Karakalos, SBN 240802
aek@strausslawgroup.com
**STRAUSS LAW GROUP, APC**
121 N. Fir Street, Suite F
Ventura, CA 93001
Telephone: (805) 641-9992
Facsimile: (805) 641-9993

Attorneys for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL CURTIS, an individual; ARTHUR WILLIAMS, an individual, <br><br>Plaintiffs, <br><br>v. <br><br>IRWIN INDUSTRIES, INC., a California corporation; and DOES 1 through 100, inclusive, <br><br>Defendants. | Case No.: 2:15-cv-02480 <br><br>**NOTICE OF ERRATA RE: NOTICE OF ADDITIONAL AUTHORITY RE: PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br>[Complaint filed: February 17, 2015] |

1

**NOTICE OF ERRATA RE: ADDITIONAL AUTHORITY**

Plaintiffs Carl Curtis and Arthur Williams, by and through counsel, respectfully filed their Notice of Additional Authority in support of their Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint on September 21, 2015, and inadvertently did not attach Exhibit "A" of the June 18, 2015, the United States District Court for the Eastern District of California issued a decision regarding the applicability of the California Labor Code in federal enclaves in the case of *Korndobler v. DNC Parks & Resorts at Sequoia*, No. 1:15-cv-00459 LJO SKO, 2015 WL 3797625 (E.D. Cal. June 18, 2015).

Dated: September 22, 2015          **STRAUSS & PALAY, APC**

By:    /s/ Michael A. Strauss
Michael A. Strauss, Esq.
Andrew C. Ellison, Esq.
*Attorneys for Plaintiffs and the Putative Class*

Dated: September 22, 2015          **STRAUSS LAW GROUP, APC**

By:    /s/ Aris E. Karakalos
Anthony R. Strauss, Esq.
Aris E. Karakalos, Esq.
*Attorneys for Plaintiffs and the Putative Class*

2015 WL 3797625
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Martin KORNDOBLER, et al., Plaintiffs,
v.
DNC PARKS & RESORTS AT SEQUOIA,
and Does 1–100, Defendants.

No. 1:15–cv–00459 LJO SKO.
|
Signed June 18, 2015.

**Attorneys and Law Firms**

Daniel M. Kopfman, Andrew Butler Jones, Wagner and Jones, Fresno, CA, for Plaintiffs.

Joshua Adam Rodine, Seyfarth Shaw LLP, Los Angeles, CA, Elizabeth Jarvis MacGregor, Justin Taylor Maes Curley, Seyfarth Shaw LLP, San Francisco, CA, for Defendants.

MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS (Doc. 12)

LAWRENCE J. O'NEILL, District Judge.

## I. *PRELIMINARY STATEMENT TO PARTIES AND COUNSEL*

*1 Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. *INTRODUCTION*

Plaintiffs Martin Korndobler, Stephen Ernst, Matt Miller, Christopher Cruz and Greg Chaney are current or former employees of Defendant DNC Parks & Resorts at Sequoia ("DNC"), a concessioner operating in Sequoia National Park ("SNP"). Plaintiffs allege that Defendant is liable under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, California's Unfair Trade Practices Act ("CUTPA"), Cal. Bus. & Prof.Code § 17200 *et seq.*, and California Labor Code §§ 1194, 1164.2 & 1197.1 for failure to pay minimum and overtime wages for on-call work.

## III. *FACTUAL BACKGROUND*[1]

Plaintiffs have all worked in the maintenance department of Defendant's operations in SNP. Compl. ¶¶ 3, 10–14. Their duties include maintaining and repairing facilities and snow removal. *Id.* Plaintiffs work "several" shifts a week on an on-call basis. *Id.* at ¶ 19. On-call shifts begin with the end of one day's shift and continue through the beginning of the next day's shift, lasting between 14 and 16 hours. *Id.* at ¶¶ 19, 29. During these shifts, Plaintiffs must carry and monitor radios and remain within the range of the radio's range (between a half and two miles of Defendant's operation). *Id.* at ¶¶ 20–21. Plaintiffs must respond within 15 minutes for a maintenance call and within 30 minutes for a snow removal call. *Id.* at ¶ 22. Plaintiffs must remain ready to work during these periods. *Id.*

Plaintiffs are not paid a wage for time spent waiting for calls. *Id.* at ¶ 23. Rather, they are only paid for work performed when they are called out and clocked in to perform work on a recorded work order. *Id.* Plaintiffs allege that at times they have been called in, but not paid, because work orders were cancelled prior to their arrival. *Id.* Plaintiffs also allege that they are often called for technical advice for which they are not paid. *Id.* Plaintiffs are subject to discipline if they fail to respond to a call. *Id.* During the winter months, Plaintiffs are required to perform storm watch shifts in addition to

maintenance call shifts. *Id.* at ¶ 24. While on storm watch shifts, Plaintiffs are subject to the same constraints as they are during maintenance call shifts. *Id.* at ¶¶ 24–26.

## IV. *PROCEDURAL HISTORY*

**\*2** Plaintiffs filed their Complaint on March 25, 2015. Compl., Doc. 1. On April 30, 2015, Defendant DNC Parks moved to dismiss Plaintiffs' state law claims pursuant to Fed R. Civ. P. 12(b)(6) on the basis that they do not apply to activities in national parks under the Federal Enclave doctrine. Def.'s Mot. to Dismiss ("MTD"), Doc. 12. Defendant also argues that Plaintiff Korndobler's claims are time barred. *Id.* Plaintiffs responded on June 1, 2015. Pls.' Opposition to Def.'s Mot. to Dismiss ("Opposition"), Doc. 17. Defendant replied on June 8, 2015. Def.'s Reply ("Reply"), Doc. 20. A hearing was originally scheduled for June 15, 2015, but was taken off calendar pursuant to Local Rule 230(g).

## V. *STANDARD OF DECISION*

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens,* 546 F.3d 580, 588 (9th Cir.2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' ... are not entitled to be assumed true." *Iqbal,* 556 U.S. at 681. In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly,* 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

**\*3** To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir.1990) (citations omitted).

## VI. *ANALYSIS*

### A. *Whether Plaintiffs Have Viable State Wage Law Claims*

#### 1. *Legal Background of the Federal Enclave Doctrine*

The Federal Enclave Clause provides that:

> The Congress shall have power ... To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise [18] like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings ... U.S. Const. Art. I § 8, cl. 17. Only federal law applies on a federal enclave under exclusive federal jurisdiction, except to the extent Congress has otherwise provided. *Pacific Coast Dairy v. Department of Agriculture of California,* 318 U.S. 285, 294, 63 S.Ct. 628, 87 L.Ed. 761 (1943). State laws which existed at the time of cession remain in force unless they are abrogated by Congress. *Id.* "This

assures that no area however small will be left without a developed legal system for private rights." *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 100, 60 S.Ct. 431, 84 L.Ed. 596 (1940). Because the federal government has exclusive jurisdiction, such laws become federal laws. *Id.* Subsequently enacted state laws have no effect in the enclave unless they are adopted by Congress or the state expressly reserved jurisdiction over such matters. *Paul v. United States,* 371 U.S. 245, 269, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963) (current regulations are effective if "the same basic scheme" was in effect at the time of transfer). "[A]n authorization of state regulation is found only when and to the extent there is a clear congressional mandate, specific congressional action that makes this authorization of state regulation clear and unambiguous." *Hancock v. Train,* 426 U.S. 167, 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) (internal quotations omitted).

The United States assumed "sole and exclusive jurisdiction" over the areas that became Sequoia and Yosemite National Parks on June 2, 1920. 16 U.S.C.A. § 57; *see also Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 525–26, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938). California reserved the right to serve civil or criminal process, "to tax persons and corporations, their franchises and property on the lands," and to collect fees for fishing licenses in these areas. 16 U.S.C. § 57.

**2. *Whether 36 C.F.R. § 8.4 Authorizes the Enforcement of State Laws in National Parks***

National Park Service regulations state that "[a] concessioner shall comply with all standards established pursuant to Federal or State labor laws, such as those concerning minimum wages, child labor, hours of work, and safety, that apply in the State in which the concession facility is located." 36 C.F.R. § 8.4. Plaintiffs argue that through this regulation, the Secretary of the Interior incorporated state labor laws into the federal law applicable to all national parks, under authority vested to him under the National Park Services Act and the National Park Service Concessions Management Act (collectively, the "Park Acts." Opposition at 5–7.[2] Defendant argues that Section 8.4 does not give Plaintiffs the power to enforce state labor laws because it is not a "clear and unambiguous" congressional statement of intent. Reply at 2.

*4 In *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 182, 108 S.Ct. 1704, 100 L.Ed.2d 158, (1988), the Supreme Court found that a statute that applied state worker's compensation laws to federal properties "provide[d] the requisite clear congressional authority." This statute described that state workers compensation officials "shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America ... to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be." *Id.* (quoting 40 U.S.C.A. § 290 (1988)).

The Park Acts provided that the Secretary of the Interior "shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service." 16 U.S.C. § 3 (2013). Congress however also included language that controlled the enforcement of these regulations. Originally, punishment was limited to what was "provided for in section 50 of the Act entitled 'An Act to codify and amend the Penal Laws of the United States ...' " *Id.* This was amended in 1920 to be "a fine of not more than $500 or imprisonment for not exceeding six months, or both, and [the] adjudged to pay all costs of the proceedings." *Id.* The Court reads these statutes as indicating an *absence* of a Congressional intent to subject Park lands to state authority, or to vest power in the Secretary of the Interior to allow the Secretary to do so on behalf of Congress. While the Secretary has broad authority to manage the Parks and write regulations, Congress limited the enforcement of these regulations to federal actions. Because Congress has "directly spoken to the precise question at issue," that is the end of the matter. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**3. *Whether the State Laws Existed When The Enclave Was Created***

Plaintiffs argue that the California statutes at issue in this case are part of the same "basic scheme" of wage laws that existed at the time the Parks were ceded to the United States. Opposition at 7–10. Plaintiffs seek to recover under Cal. Bus. & Prof.Code § 17200, *et seq.,* and California Labor Code §§ 1194, 1164.2 & 1197.1. Compl. ¶¶ 60, 66–67.

According to the statute, CUPTA was enacted in 1977. While Plaintiffs argue that state minimum wage laws date back to 1913, as discussed below, they make no such argument that CUPTA, or its provisions that might make wage violations enforceable as an unfair business practice do so. In fact, they

do not. Thus, the Court GRANTS Defendant's motion to dismiss Plaintiffs' Third Cause of Action.

Defendant also argues that Plaintiffs assert labor rights that were folded into law after SNP was ceded. MTD at 10–11; Reply at 6. Plaintiffs do not contest that their claims for liquidated damages and penalties arise out of laws adopted in 1991 and 1983, respectively. Cal. Lab.Code §§ 1194.2 & 1197.1. Thus, the Court agrees that these claims fail as well.

*5 Plaintiffs' minimum wage claims are not so straightforward. As both parties recognize, California has had minimum wage laws since 1913. Stats.1913, ch. 324, §§ 12–13, p. 635–637. Plaintiffs argue that these laws continue to apply in SNP. In *Paul,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292, the Supreme Court considered the enforceability of California state milk price regulations on federal military installations. The Court held that if state milk regulations were in effect at the time that the lands were ceded to the United States, then they could be enforced on installations to the extent that they did not conflict with federal procurement laws. *Id.* at 269.[3] The Court also found that it made no difference that the price regulations differed from those at the time the lands were ceded so long as the "same basic scheme" was in effect. *Id.*

California's 1913 laws created a private right of action under which employees could recover damages against their employers: "Any employee receiving less than the minimum wage applicable to such an employee shall be entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for such lesser wage." Stats.1913, ch. 324 § 13, p. 637. The current law reads: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab.Code § 1194(a). As the California Supreme Court has recognized, "[v]irtually the same statutory and regulatory remains in place today." *Martinez v. Combs,* 49 Cal.4th 35, 55–56, 109 Cal.Rptr.3d 514, 231 P.3d 259 (2010), as modified (June 9, 2010) (discussing history of California's minimum wage provisions). Defendant does not argue that the current minimum wage provisions are not of the same "basic scheme" as those in the 1913 laws.[4] Moreover, the Court is persuaded by the California Supreme Court's findings that the laws are "virtually the same." *Id.* Thus, this Court concludes that California's minimum wage laws remain in force at SNP.

Defendant argues that case law recognizing the right to be compensated for on-call time did not come about until 1944. Reply at 6. Defendant claims that the this right was established by the Supreme Court in *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944). Defendant must not have read this case very closely, though, because *Armour* relies on a 1913 Supreme Court case for its conclusion "[t]hat inactive duty may be duty nonetheless is not a new principal invented for application to this Act." *Id.* (quoting *Missouri, K. & T. Ry. Co. of Texas v. United States,* 231 U.S. 112, 119, 34 S.Ct. 26, 58 L.Ed. 144 (1913)). The 1913 case, in turn, relies on an even earlier case for its conclusion that railroad workers "were none the less on duty when inactive. Their duty was to stand and wait." 231 U.S. at 119 (quoting *United States v. Chicago, M. & P.S. Ry. Co.,* 197 F. 624, 628 (E.D.Wash.1912)). Thus, the Court finds this argument unpersuasive.

*6 Finally, Defendant argues that Plaintiffs' minimum wage claims cannot be applied in SNP because they conflict with federal law. MTD at 11. Defendant relies on *Mersnick v. USProtect Corp.* for the theory that claims under Cal. Labor Code §§ 201–203 are barred by the Federal Enclave Doctrine because the FLSA "provides for minimum standards for both wages and overtime entitlement, and delineates administrative procedures by which covered worktime must be compensated." No. C–0603993 RMW, 2006 WL 3734396, at *8 (N.D.Cal. Dec.18, 2006). Plaintiffs, however, do not seek to recover under these statutes.

Moreover, the FLSA clearly allows states to establish and enforce higher minimum wages:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or

municipal ordinance establishing a higher standard than the standard established under this chapter.

29 U.S.C.A. § 218.

The Ninth Circuit has not weighed in on whether FLSA might "conflict" with state laws in federal enclaves. It has, however, considered this issue in the context of maritime law. *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1420 (9th Cir.1990).[5] In that case the Ninth Circuit found that "Congress has specifically allowed states to enforce overtime laws more generous [sic] than the FLSA, 29 U.S.C. § 218(a), and we find no indication that Congress intended that maritime employees not benefit from more generous state wage and hour laws." *Id.* The Ninth Circuit has since described this case as relying "on the principle that FLSA sets a floor rather than a ceiling on protective legislation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760 (9th Cir.2010) (vacated on other grounds). Similarly, the Ninth Circuit has also recognized that the purpose of FLSA is "to enact minimum wage and maximum hour provisions designed to protect employees." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1153–54 (9th Cir.2000). In light of the Ninth Circuit's recognition of FLSA as providing a "floor rather than a ceiling" on minimum wage issues and Congress's clear statement the FLSA shall not "excuse noncompliance with any ... State law ... establishing a minimum wage higher than the [federal] minimum wage," this Court cannot see how requiring concessionaires to comply with California's minimum wage laws conflicts with FLSA.

For the reasons discussed above, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action. The Court DENIES Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action, to the extent that it is brought under Cal. Labor Code § 1194. Plaintiffs' claims arising under Cal Labor Codes §§ 1164.2 and 1197.1 are dismissed. No leave to amend is granted the dismissed claims, because further amendment would be futile.

**B. *Whether Korndobler's FLSA Claims are Time–Barred***

*7 Defendant argues that Plaintiff Korndobler's claims are time-barred by the FLSA's two-year statute of limitations. MTD at 11–13; Reply at 7–10. Plaintiffs claim that Korndobler's claims are viable because a three year limitations period applies when a claim arises out of a "willful violation." Opposition at 10–12.

The FLSA provides that "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C.A. § 255(a). To prove a "willful violation," a plaintiff must show that an employer "knew *or showed reckless disregard for the matter of whether* its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (emphasis in original) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). "Mere negligence by the employer in determining its legal obligation is not sufficient; there must be evidence that the employer affirmatively knew it was violating the FLSA or that it was acting with 'reckless disregard' of the FLSA." *Nelson v. Waste Mgmt. of Alameda Cnty., Inc.*, 33 F. App'x 273, 274 (9th Cir.2002). At the pleading stage, however, "a plaintiff need not allege willfulness with specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir.2013).

Defendant cites to two cases as examples where Courts have dismissed FLSA claims that did not assert factual premises that defendants acted willfully. MTD at 12–14. First, in *Morgovsky v. AdBrite, Inc.*, the Northern District of California found an employer's email explaining that "he expects employees to put in '9–10 hours' and 'to give more than the typical 9–5 job' " did not "provide a factual basis which plausibly suggests that Defendants' alleged FLSA violation was willful." No. C 10–05143 SBA, 2012 WL 1595105, at *6 (N.D.Cal. May 4, 2012). Similarly, in *Thompson v. N. Am. Terrazzo, Inc.*, the Western District of Washington found a plaintiff's allegations that employers "intentionally and purposefully den[ied] overtime pay which had been owed to plaintiffs" and did not allege the factual basis for the employer's "knowledge or reckless disregard that its conduct was prohibited by the FLSA." C13–1007RAJ, 2014 WL 2048188, at *6 (W.D.Wash. May 19, 2014).

In their Opposition, Plaintiffs argue that their Complaint lays out a basis on which a jury could conclude that DNC's failure was not "mere negligence, but clear policy designed to minimize its costs at the expense of employees." Opposition at 11. Plaintiffs, however, fail to identify where such a policy is alleged. Plaintiffs also point to examples of cases where willfulness has been found on the basis of an employer's large size, complex operations, or sophistication. *Id.* Again, however, the Complaint is silent on these issues. Rather, the only examples of willfulness that Plaintiffs identify in the

Complaint are the facts alleging the violations themselves. Opposition at 11. In light of the Supreme Court's holding that there is "a significant distinction between ordinary violations and willful violations," this Court cannot find that alleging *only* the facts of the underlying violations can support a finding that the threeyear period applies. *McLaughlin,* 486 U.S. at 130.

*\*8* Plaintiffs also argue that their claims should be tolled for equitable reasons. Opposition at 11–12. Equitable tolling applies in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Plaintiffs allege that their claims were tolled when they filed claims for relief with the state court (which were dismissed under pursuant to Federal Enclave issues). Opposition at 12. This argument fails. As Defendant points out, Plaintiffs allege that Korndobler ended his employment for DNC in August 2012. Compl. ¶ 10. Plaintiffs did not file their state court case until November of 2014. Req. For Judicial Notice, Doc. 13, Ex. B, at 47. Thus, Korndobler's claims were barred at this time.

For the above reasons, the Court GRANTS Defendant's motion to dismiss Plaintiffs' First and Second Causes of Action to the extent that they are based on Korndobler's claims.

## VII. *CONCLUSION AND ORDER*

For the reasons discussed above the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss, Doc. 12, as follows:

The Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action, without leave to amend.

The Court DENIES Defendant's Motion to Dismiss Plaintiffs' Fourth Cause of Action, to the extent that it is brought under Cal. Labor Code § 1194.

The Court GRANTS Defendant's motion to dismiss Plaintiffs' Fourth Cause of Action, to the extent that it is brought under Cal Labor Codes §§ 1164.2 and 1197.1, without leave to amend.

The Court GRANTS Defendant's motion to dismiss Plaintiffs' First and Second Causes of Action to the extent that they are based on Korndobler's claims. Plaintiffs are granted leave to amend these claims.

Plaintiffs shall file any amended complaint within 14 calendar days of this order. No later than 21 days after service of any amended complaint, Defendant shall file a response thereto. Plaintiffs are cautioned that this will be the last opportunity to amend.

Plaintiffs should only amend if amendment will not be futile based on the law and holding in this Order. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 3797625

### Footnotes

1      These background facts are drawn from complaints submitted by the five plaintiffs, the truth of which the court must accept for purposes of a Rule 12(b)(6) motion to dismiss.
2      Laws enacted pursuant to these acts were replaced under PL–113–287, effective December 19, 2014. NATIONAL PARK SERVICE AND RELATED PROGRAMS, PL 113–287, December 19, 2014, 128 Stat 3094. Savings provisions in 2014 Act preserve the integrity of regulations enacted under the Park Acts. *Id.* § 6(f).
3      These facts could not be determined from the record before the *Paul* Court. *Id.*
4      Notably, the 1913 labor laws applied to women and children only. This language was made gender-neutral in 1972. However, neither party argued that the gender disparity present in the 1913 law should affect the Court's analysis of whether the laws currently in place are of the "basic scheme." Thus, the Court leaves this question for another time.

5     "The rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or *interfere* with the *uniform working* of the maritime legal system." *Id.* at 1422 (emphasis in original).

**End of Document**         © 2015 Thomson Reuters. No claim to original U.S. Government Works.